Michael E. KOVAL and Jean M. Koval,
Appellees (Plaintiffs Below),

v.

SIMON TELELECT, INC., et al.,
Appellants (Defendants
Below).

No. 94S00–9710–CQ–552.

Supreme Court of Indiana.

March 31, 1998.

1300

Philip E. Kalamaros, South Bend, for Appellants.

David C. Jensen, John M. McCrum, Hammond, for Appellees.

BOEHM, Justice.

The United States District Court for the Northern District of Indiana has requested our response to two certified questions set out below.

**Factual and Procedural Background**

The certified questions arise out of a products liability suit in federal court by Michael and Jean Koval against both the manufacturer and distributer of a device that allegedly caused injuries to Michael in the course of his employment. Michael's employer, Henkels & McCoy ("H & M"), and H & M's insurance carrier, Liberty Mutual, paid Michael's medical and disability benefits under the Indiana workers' compensation law and thereby acquired liens on any recovery by the Kovals. The certified questions result from a settlement agreement reached at a mediation attended by persons who seemingly believed they represented all interested parties. One of those was an attorney apparently representing both H & M and Liberty Mutual, who agreed to a settlement that compromised the interests of both the employer and the insurer. H & M had not authorized Liberty Mutual or the attorney to settle and later refused to agree to the settlement. The terms of the mediation required that each party be represented by a person with settlement authority. Although the terms of the mediation included a requirement that the parties sign any settlement in writing before they would be bound, the district court concluded that subsequent events could waive this provision. After a hearing on the Kovals' motion to enforce the settlement agreement, the court certified two questions to this Court. *Koval v. Simon–*

*Telelect, Inc.*, 979 F.Supp. 1222 (N.D.Ind. 1997). For a detailed factual background, see *id.* at 1225–26.

**I. Ability of an Attorney to Bind the Client to a Settlement Agreement**

The first question is:

If an attorney settles a claim as to which the attorney has been retained, but does so without the client's consent, is the settlement binding between third parties and the client?

 The answer to this question is the same as to many others: it depends. An attorney's authority may be derived from the conduct of the client, either with respect to the third parties who deal with the attorney or with respect to the attorney. It may also derive from the nature of the proceedings in which the attorney represents the client and enters into a settlement agreement. In order to bind the client the attorney must have either express, implied, or apparent authority, or must act according to the attorney's inherent agency power. For the reasons explained below, we conclude that the sole act of retaining an attorney does not give the attorney the implied or the apparent authority to settle or compromise a claim in an out of court proceeding. Specifically, retention in and of itself neither confers the implied authority to settle a claim, nor is it a manifestation by the client to third parties such that the attorney is clothed with the apparent authority to settle. However, under longstanding Indiana authority, retention does equip an attorney with the inherent power to bind a client to the results of a procedure in court. We hold that for purposes of an attorney's inherent power, a procedure governed by Indiana's Rules for Alternative Dispute Resolution (the "ADR rules") is a procedure "in court" if the parties are expected to appear by representatives with authority to resolve the matter. Accordingly, in the absence of a communication of lack of authority by the attorney, as a matter of law, an attorney has the inherent power to settle a claim when the attorney attends a settlement procedure governed by the ADR rules.

## A. An attorney's implied authority

 "Authority is the power of the agent to affect the legal relations of the principal by acts done in accordance with the principal's manifestations of consent to him." RESTATEMENT (SECOND) OF ·AGENCY § 7 (1958). Authority can be express or implied and may be conferred by words or other conduct, including acquiescence. *Id.* at cmt. c. Implied authority can arise from words used, from customs, or from the relations of the parties. *Id.* The agent is authorized if the agent is reasonable in drawing an inference from the principal's actions that the principal intended to confer authority. *Id.* at cmt. b.[1] It is well settled that an attorney, by virtue of the representation, becomes a powerful agent with a great deal of authority. Retention confers on an attorney the general implied authority to do on behalf of the client all acts in or out of·court necessary or incidental to the prosecution or management of the suit or the accomplishment of the purpose for which the attorney was retained.

*United Farm Bureau Mut. Ins. Co. v. Groen,* 486 N.E.2d 571, 573 (Ind.Ct.App.1985). *See also Miedreich v. Rank,* 40 Ind.App. 393, 397, 82 N.E. 117, 118 (1907) (attorney is more than a mere agent of the client; attorney is the "sole manager" of "the business committed to his care"). Decisions relating to trial tactics for example—when to object, what motions to file, which arguments to present—or how to negotiate are left to the attorney. *See, e.g., Hoffman v. Hoffman,* 115 Ind.App. 277, 57 N.E.2d 591 (1944) (attorneys could agree to change of venue without client's consent).[2]

 As a general proposition an attorney's implied authority does not extend to settling the very business that is committed to the attorney's care without the client's consent. The vast majority of United States jurisdictions hold that the retention of an attorney to pursue a claim does not, without more, give the attorney the implied authority to settle or compromise the claim.[3] The

---

1. The Seventh Circuit, applying Indiana law, recently articulated a standard for implied authority: "[I]t may be implied by actions of the principal that would lead a reasonable agent to believe that he possessed such authority." *Carr v. Runyan,* 89 F.3d 327, 331 (7th Cir.1996). This standard is similar to that of the Second Restatement that the agent must be reasonable in inferring from the client's "manifestation" that the client intended the action.

2. An attorney not only has the authority to conduct and control a lawsuit and make tactical decisions, but also to stipulate to binding admissions of fact. *See, e.g., Bramblett v. Lee,* 162 Ind.App. 654, 320 N.E.2d 778 (1974) (without consent, attorney entered into binding stipulation of client's paternity). An attorney can bind a client to a default judgment entered due to an attorney's neglect. *See, e.g., International Vacuum, Inc. v. Owens,* 439 N.E.2d 188 (Ind.Ct.App. 1982) (no abuse of discretion in refusing to vacate default judgment against the client where attorney's failure to keep apprised of court proceedings resulted in the attorney's absence at pre-trial hearing, hearing on a motion for a default judgment, and hearing on damages). In these respects, a client is bound by the skill, bad luck, or incompetence· of the agent it chooses. In the absence of fraud by the attorney, the client is bound by the action of the attorney, even though the attorney is guilty of gross negligence. *Mirka v. Fairfield of Am., Inc.,* 627 N.E.2d 449, 450 n. 1 (Ind.Ct.App.1994). *See also Parker v. State,* 676 N.E.2d 1083, 1086 (Ind.Ct.App.1997) (the general rule is that a client is bound by his attorney's actions in civil proceedings).

3. *See generally* 7A C.J.S. *Attorney & Client* § 214 (1980) ("ordinary employment or retainer of an attorney to represent a client with respect to litigation or other matters does not of itself give the attorney the implied or apparent authority to bind his client by a settlement or compromise of the cause of action...."); Eunice A. Eichelberger, Annotation, *Authority of Attorney to Compromise Action—Modern Cases,* 90 A.L.R.4TH 326, § 3 (1991). *See, e.g., Saxton v. Splettstoezer,* 557 P.2d 1126 (Alaska 1976); *Cross v. District Court In and For the First Judicial District,* 643 P.2d 39 (Colo.1982); *Nehleber v. Anzalone,* 345 So.2d 822 (Fla.Dist.Ct.App.1977); *Brewer v. National R.R. Passenger Corp.,* 165 Ill.2d 100, 208 Ill.Dec. 670, 649 N.E.2d 1331 (1995); *Miotk v. Rudy,* 4 Kan. App.2d 296, 605 P.2d 587 (1980); *Torrao v. Cox,* 26 Mass.App.Ct. 247, 525 N.E.2d 1349 (1988); *Hallock v. State,* 64 N.Y.2d 224, 485 N.Y.S.2d 510, 474 N.E.2d 1178 (1984); *Garrison v. Daytonian Hotel,* 105 Ohio App.3d 322, 663 N.E.2d 1316 (1995); *Parrillo v. Chalk,* 681 A.2d 916 (R.I.1996); *Absar v. Jones,* 833 S.W.2d 86 (Tenn. Ct.App.1992); *Johnson v. Rancho Guadalupe, Inc.,* 789 S.W.2d 596 (Tex.Ct.App.1990); *New England Educ. Training Serv., Inc. v. Silver Street Partnership,* 148 Vt. 99, 528 A.2d 1117 (1987). *But see Pembroke State Bank v. Warnell,* 266 Ga. 819, 471 S.E.2d 187 (1996) (in civil litigation, an attorney·has the apparent authority to bind a client to a settlement or compromise of claim from the time of retention, unless the authority is limited by the client and communicated to opposing parties); *Nelson v. Consumers Power Co.,* 198 Mich.App. 82, 497 N.W.2d 205 (1993) (attorney has authority to bind client to settlement if

rationale for this rule is that an attorney's role as agent by definition does not entitle the attorney to relinquish the client's rights to the subject matter that the attorney was employed to pursue to the client's satisfaction. In Indiana, the rule that retention does not ipso facto enable an attorney to settle a claim has a solid if distant foundation. Several older cases either hold or indicate in dicta that an attorney who settles or compromises a claim without express authority from the client does not bind the client. *Union Mut. Life Ins. Co. v. Buchanan*, 100 Ind. 63, 76 (1885); *Combs v. Combs*, 56 Ind.App. 656, 660, 105 N.E. 944, 946 (1914); *Jennings v. South Whitley Hoop Co.*, 50 Ind.App. 241, 249, 98 N.E. 194, 196 (1912); *Miedreich v. Rank*, 40 Ind.App. 393, 397, 82 N.E. 117, 118 (1907); *Repp v. Wiles*, 3 Ind.App. 167, 171, 29 N.E. 441, 442 (1891). As summed up in *Combs*, 56 Ind.App. at 660, 105 N.E. at 946:

> Where an attorney is acting under an employment to collect a claim or conduct a lawsuit, such employment does not give him authority to compromise such claim or suit [and bind the client] without the consent of the client, except in cases of emergency, where the interests of the client reasonably appear in jeopardy and delay for consultation would seriously imperil such interests.

See also *Miller v. Edmonston*, 8 Blackf. 291 (1846) (attorney has no authority to compromise with a debtor or bind his principal by any arrangement for the satisfaction of a debt, short of an actual collection of the money); *accord Wakeman v. Jones*, 1 Ind. 517 (1849). Some of these cases explicitly focused on the distinction between the implied authority to conduct litigation and the authority to settle a claim. In *Miedreich* for example, the court described the scope of an attorney's authority as including "all the proceedings in court to enforce the remedy, to bring the demand, cause of action, or subject-matter of the suit to trial, judgment and execution" but also stated that this authority did not extend to an ability to "compromise, settle, surrender, or impair the cause of action, or the subject-matter of litigation without the consent of [the] client." 40 Ind.App. at 397, 82 N.E. at 118 (internal quotation marks and citation omitted). After a long hibernation, in 1996 this general rule was again recognized by the Indiana Court of Appeals in *Gravens v. Auto–Owners Ins. Co.*, 666 N.E.2d 964 (Ind.Ct.App.1996), *trans. denied*, 683 N.E.2d 586 (Ind.1997) (table).[4] As the Court of Appeals indicated, parties do not normally assume that an attorney in informal negotiations has authority to bind the client.[5] It is not too much to ask that other parties dealing with an attorney verify the authority to settle before they may expect the negotiation with the attorney to bind the client. Accordingly, the general rule in Indiana is that retention of an attorney does not without more carry implied authority to the attorney to settle.[6]

settlement is in writing and subscribed by the attorney or if the settlement was made in open court).

**4.** In *Gravens*, the plaintiff retained an attorney to pursue a claim against an insurance company. The attorney settled the claim without the plaintiff's consent. When notified of the settlement, the plaintiff immediately rejected it, refused to sign a release, obtained new counsel, and filed a lawsuit against the insurance company. The company invoked accord and satisfaction as an affirmative defense, asserting that the case had already been settled by the original attorney. The Court of Appeals reversed the trial court's grant of summary judgment in favor of the insurance company and held that an attorney did not have the implied authority to settle a case without the authorization or consent of the client.

**5.** In *Natare Corp. v. Aquatic Renovation Systems Inc.*, 987 F.Supp. 695 (S.D.Ind.1997) the court faced an issue similar to that presented in this case. There, an attorney entered into a settlement agreement that the client challenged on the ground that the attorney lacked authority. Noting that the current certified question was pending before this Court, the court held that the facts before it showed that the client conferred implied authority on the attorney to settle. Our answer to the certified question today is consistent with this result.

**6.** An attorney's implied authority in this respect parallels the attorney client relationship established by Indiana Professional Conduct Rule 1.2(a). "A lawyer shall abide by a client's decisions concerning the objectives of representation ... and shall consult with the client as to the means by which they are to be pursued. A lawyer shall abide by a client's decision whether to accept an offer of settlement of a matter." *See also id.* at 1.2(c), cmt. Although the Rules of Professional Conduct govern the relationship between attorney and client as between the two,

## B. *An attorney's apparent authority*

Apparent authority is the authority that a third person reasonably believes an agent possesses because of some manifestation from the principal. *Pepkowski v. Life of Ind. Ins. Co.*, 535 N.E.2d 1164, 1166 (Ind. 1989). Some form of communication, direct or indirect, from the principal, must instill a reasonable belief in the mind of the third party. *Id.* at 1167. A communication of authority by the agent is insufficient to create an apparent agency relationship. *Jarvis Drilling, Inc. v. Midwest Oil Producing Co.*, 626 N.E.2d 821, 826 (Ind.Ct.App.1993). Like implied authority, apparent authority to settle is not conferred simply by the retention of an attorney though of course it may be conferred by other actions of the client. Retention by the client is a routine prerequisite to legal representation. It may be a "communication" to third parties that they should prepare for a lawsuit, but beyond that, it tells third parties little.

## C. *An attorney's inherent agency power in court proceedings*

"Inherent agency power is a term used ... to indicate the power of an agent which is derived not from authority, apparent authority or estoppel, but solely from the agency relation and exists for the protection of persons harmed by or dealing with a servant or other agent." RESTATEMENT (SECOND) OF AGENCY § 8A (1958). Although not using the term "inherent agency power," Indiana courts have applied the concept of the inherent power of an agent, usually a general agent, and most typically a general agent of an insurer:

A general agent is one who is authorized to transact all the business of his principal, or all his business of some particular kind, or at some particular place. The principal will be bound by the acts of a general agent, if the latter acted within the usual and ordinary scope of the business in which he was employed, notwithstanding he may have violated the private instructions which the principal may have given him, provided the person dealing with such agent was ignorant of such violation and that the agent exceeded his authority.

*Farm Bureau Mut. Ins. Co. v. Coffin*, 136 Ind.App. 12, 16, 186 N.E.2d 180, 182 (1962) (quoting *Cruzan v. Smith*, 41 Ind. 288, 297 (1872) (internal quotation marks and citation omitted)).[7] The reason for this rule is that if one of two innocent parties must suffer due to a betrayal of trust—either the principal or the third party—the loss should fall on the party who is most at fault. Because the principal puts the agent in a position of trust, the principal should bear the loss. *Id.* at 18, 186 N.E.2d at 183 (citations omitted). The agent remains liable to the principal in accordance with the terms of their agreement. RESTATEMENT (SECOND) OF AGENCY § 8A cmt. c (1958).

"Special agents," in contrast, do not as a general proposition carry inherent agency power. A special agent is one authorized to do one or more specific acts but not to conduct business generally for the principal. As to special agents, the general rule is that:

[t]he principal is not bound by the acts of a special agent, if he exceeds the limits of his authority. And it is the duty of every person who deals with a special agent to ascertain the extent of the agent's authority before dealing with him. If this is neglected, such person will deal at his per-

they do not set forth the full parameters of the attorney's ability to bind the client in dealings with third parties. The client may not intend for the attorney to settle a claim but may nonetheless imply that intention to the attorney. If so, the client is bound by a resulting settlement. Further, both apparent authority and inherent agency power may be created by actions of the client in its dealings with third parties even if the attorney knows there is no actual authority. Under these circumstances the client is bound even if it is a breach of the attorney's professional obligations to make the commitment.

7. The Restatement (Second) of Agency's version is set out in § 161:

A general agent ... subjects his principal to liability for acts done on his account which usually accompany or are incidental to transactions which the agent is authorized to conduct if, although they are forbidden by the principal, the other party reasonably believes that the agent is authorized to do them and has no notice that he is not so authorized.

il, and the principal will not be bound by any act which exceeds the particular authority given.

*Farm Bureau Mut. Ins. Co.,* 136 Ind.App. at 16, 186 N.E.2d at 182–83 (quoting *Cruzan,* 41 Ind. at 298) (internal quotation marks and citation omitted); RESTATEMENT (SECOND) OF AGENCY § 161A (1958). *See also Allegheny Mut. Cas. Co. v. Franklin,* 513 N.E.2d 658, 659 (Ind.Ct.App.1987). In this case, neither Liberty Mutual nor the attorney appears to be a general agent of the employer. Neither party was authorized to transact "all the business" for H & M. Both Liberty Mutual and the attorney were agents only with respect to pursuing the workers' compensation lien. However, attorneys present a unique circumstance where, although they are special agents, some inherent power is found. This stems from a line of Indiana cases that recognize the power of an attorney to bind the client to the attorney's actions in court. It is derived from the need for structural integrity of court procedures and the protection of third parties who rely on the finality of those procedures. Both considerations require that an attorney have the power to bind the client in court.

■ This reasoning has led to the long-standing general rule in Indiana that:

An attorney may without express authority, bind his client by agreement that judgment may be taken against him, and that, too, though the attorney know that his client has a good defense to said action. If

[the attorney] acts contrary to the express directions of his client, or to his injury, the client must look to the attorney for redress.

*Thompson v. Pershing,* 86 Ind. 303, 310 (1882). *See also Ferrara v. Genduso,* 214 Ind. 99, 101, 14 N.E.2d 580, 581 (1938) (counsel did not follow the client's instructions, did not inform the client that the cause was set for trial, and agreed that judgment should be entered in favor of the opposing party without the client's consent; judgment affirmed by this Court); *Hudson v. Allison,* 54 Ind. 215, 216 (1876); *Guydon v. Taylor,* 115 Ind. App. 685, 690, 60 N.E.2d 750, 751 (1945); *Wilkie v. Reynolds,* 34 Ind.App. 527, 530–31, 72 N.E. 179, 181 (1904); *Devenbaugh v. Nifer,* 3 Ind.App. 379, 382, 29 N.E. 923, 924 (1892). Although the theoretical underpinnings of this rule are not always fully explained, and on occasion are set forth in terms slightly at variance with standard agency doctrines,[8] these cases uniformly bind the client to an in court agreement by the attorney and remit the client to any recovery that may be available from the attorney.[9] This distinction between in court consents and out of court agreements is also found in Indiana statutory law at least since the civil code of 1881 and currently embodied in Indiana Code § 34–1–60–5: "An attorney has authority, until discharged or superseded by another ... [t]o bind his client in an action or special proceeding, by his agreement, filed with the clerk, or entered upon the minutes

8. In *Thompson,* the court referred to an "implied" authorization, 86 Ind. at 310, but cited *Hudson v. Allison,* 54 Ind. 215, 216 (1876) where the court said: "We think the attorneys had power to make the agreement on which the judgment was rendered." Similarly, in *Guydon,* the court said that the attorney "was clothed, under the law, with ample authority." *Guydon,* 115 Ind.App. at 690, 60 N.E.2d at 751. This reference to authority, as a matter of law, is more consistent with power, which results from the agency relation itself than with authority, which results from an act of the client. Further, the standard formulation of this rule finding the client bound to action in court provides that the client is to turn to the attorney for redress. This is contrary to conventional rules of implied authority. *See, e.g.,* 2A *Agency* C.J.S. § 153 (1972) (implied authority, unlike apparent authority, is "authority which the principal intended that the agent should have").

9. In this case, depending on facts unknown to us, the attorney may have acted perfectly properly and incurred no exposure to the employer. The facts of this case may present multiple agency relationships. If Liberty Mutual was H & M's agent for purposes of securing and informing an attorney and in that capacity incorrectly advised the attorney as to the authority to compromise the lien, H & M's redress may be against Liberty Mutual, its intermediate agent, rather than against the attorney. Even if the attorney did not act based on some oversight by Liberty Mutual, depending upon the agreement between a principal and an intermediate agent, an intermediate agent may be responsible for the conduct of subagents. Accordingly, under an intermediate agency theory, Liberty Mutual may be liable to H & M for any damage done. *See, e.g.,* RESTATEMENT (SECOND) OF AGENCY §§ 5, 406 (1958).

of the court, and not otherwise." Although the statute perpetuates the archaic term "minutes of the court" today it presumably refers to the transcript and chronological case summary and, in the context of an ADR, whatever memorializes that proceeding.

■ This rule is followed in many, but certainly not all jurisdictions. *See, e.g., Eida v. Stoddard*, 111 N.H. 123, 276 A.2d 12 (1971); *De Charette v. St. Matthews Bank & Trust Co.*, 214 Ky. 400, 283 S.W. 410 (1926); *Turner v. Turner*, 241 Miss. 444, 130 So.2d 871 (1961). *See generally* 7A C.J.S. *Attorney & Client*, § 200, n. 56 (1980).[10] Its origins can be traced at least to the House of Lords where the speaker, directing his comments to the validity of a consent decree, stated: "Where a decree is made by consent of counsel, there lies not an appeal or re-hearing, though the party did not really give his consent; but his remedy is against his counsel...."[11] *Bradish v. Gee*, Amb., 229 (1754). *See also Downing v. Cage*, 1 Eq.Ab. 165 (1699). The cases in Indiana and elsewhere recite the content of this rule, but frequently do not explain the reason for it. Indeed one rarely encounters a rule that is so commonly cited and yet so infrequently explained. When the rationale is stated, it emerges as one of necessity. The Supreme Court of South Carolina explained:

> It is true that attorneys, under their general authority as such, have no [power to release a lien]; but there is a wide and clear distinction between the acts of attorneys under their general authority in matters not in court, and the acts of attorneys in the conduct and progress of a suit in court.... Upon this distinction, in large measure, rest the certainty, verity, and

finality of every judgment of a court. Litigants must necessarily be held bound by the acts of their attorneys in the conduct of a cause in court, in the absence, of course, of fraud.

*Alma Lumber Co. v. Beecham*, 47 S.C. 393, 25 S.E. 285, 286 (1896). *See also Parr v. Chicago, B & Q. R.R. Co.*, 194 Mo.App. 416, 184 S.W. 1169, 1170 (1916). A variant on this theme is that in court the client speaks through the attorney who is deemed the same as the client. "There is full power on the part of the counsel to represent the client [in court]...." *Williams v. Simmons*, 79 Ga. 649, 7 S.E. 133, 135 (1888); *Singleton v. Bunge Corp.*, 364 So.2d 1321, 1325 (La.Ct. App.1978). The reason behind this rule stems from the setting of an in court proceeding and the unique role of an attorney-agent in that setting. Proceedings in court transpire before a neutral arbiter in a formal and regulated atmosphere, where those present expect legally sanctioned action or resolution of some kind. A rule that did not enable an attorney to bind a client to in court action would impede the efficiency and finality of courtroom proceedings and permit stop and go disruption of the court's calender. Of course the attorney is free, and obligated, to disclaim authority if it does not exist. But in the absence of such a disclaimer, an attorney's actions in court are binding on the client. In contrast to court proceedings, when an attorney represents a client out of court, custom does not create an expectation of settlement or compromise without the client's signing off. *Gravens*, 666 N.E.2d at 966 ("as in most insurance settlements, both parties understood that there would be no

---

10. Under the federal rule, an attorney is presumed to have the authority to consent to judgment but the presumption is not conclusive, i.e., there is no federal rule of law to this effect. If the client contends on appeal that the attorney lacked authority, the client is entitled to an evidentiary hearing in the trial court but "carr[ies] a heavy burden to establish that their attorney acted without any kind of authority in agreeing to entry of judgment." *Surety Ins. Co. of Cal. v. Williams*, 729 F.2d 581, 582–83 (8th Cir.1984). In the Seventh Circuit, the burden on the client is to show lack of authority by "affirmative proof." *Bradford Exchange v. Trein's Exchange*, 600 F.2d 99, 102 (7th Cir.1979) (citing *United*

*States v. Beebe*, 180 U.S. 343, 352, 21 S.Ct. 371, 374–75, 45 L.Ed. 563 (1901)).

11. The quote continues: "but if such decree was by fraud and covin, the party may be relieved against it, not by re-hearing or appeal, but by original bill." The rule in Indiana is similar in that "a fraudulent combination or collusion between the attorney and the other side" is not attributable to the client. *Ferrara*, 214 Ind. at 102, 14 N.E.2d at 581; *Guydon*, 115 Ind.App. at 690, 60 N.E.2d at 751 (agreeing that "a judgment procured by fraud is void"). The stipulated statement of facts contains no suggestion of fraud on the part of anyone involved.

settlement without a release signed by the [client]").

### D. *Proceedings under ADR rules may be court proceedings for this purpose*

The question remains what constitutes an "in court" proceeding in this age of alternative dispute resolution.[12] We find no authority on the question whether a mediation or other formal method of resolving claims is akin to an in court settlement or confession or judgment for purposes of an attorney's inherent power. We conclude that the same reasons that justify the exception to the general rule for in court proceedings are present in proceedings governed by the ADR rules, in which a rule, an order of the convening authority, or the agreement of the parties provides for authorized representation. A variety of rules in Indiana govern mediation, arbitration, mini-trials, summary jury trials, and private judges. Ind.Alternative Dispute Resolution Rule 1.2. As a formal matter, "[a]t all times during the course of any alternative dispute resolution proceeding, the case remains within the jurisdiction of the court which referred the litigation to the process." A.D.R. 1.7. Specifically, the rules for mediation encompass the qualifications and selection of the mediator as well as the mediation procedures. A.D.R. 2.4, 2.5, 2.7. More importantly, the rules for several forms of ADR, including mediation, explicitly contemplate authority to settle on the part of the parties' representatives. In those cases all parties are expected to be able to resolve the matter. Rule 2.7(B)(2) requires that in all mediation conferences: "All parties, attorneys with settlement authority, representatives with settlement authority, and other necessary individuals shall be present at each mediation conference to facilitate settlement of a dispute unless excused by the court." Other methods of ADR have similar provisions that require or permit the parties to be bound, or treat the matter as a court proceeding. *See* A.D.R. 3.4(F) (arbitration) (parties decide at outset which issues submit-

ted to arbitration will be binding; parties can decide not to reject a non-binding arbitration determination); A.D.R. 4.4(A) (mini-trials) ("The court will ... direct representatives with settlement authority to meet ... in an effort to settle the litigation."); A.D.R. 5.3(D) (summary jury trials) ("The parties may stipulate that a unanimous verdict or a consensus verdict shall be deemed a final determination on the merits...."); A.D.R. 6.3(B) (private judges) (private judge has same powers as circuit judge including deciding the outcome of case).

■ Under many of these rules, an ADR method is a formal proceeding where the parties are assembled in a setting subject to the court's jurisdiction, before a court appointed or otherwise approved official, in a court sanctioned environment, for the express purpose of settling a claim, and with the set expectation that those attending have the authority to do so. These are unlike an unstructured negotiation, where it is reasonable to conclude that the client may not have authorized the settlement and there is no reasonable assumption that the attorney was empowered with the authority to settle. In sum, the rule that an attorney has the inherent power to bind the client to an in court judgment applies to proceedings governed by the ADR rules in which the parties are ordered, required by the rule, or agree to appear through authorized representatives. These proceedings are "in court" for purposes of an attorney's inherent power, irrespective of whether they actually occur inside a courtroom. This rule will not only further the successful practice of mediation and other ADR methods, as effective means of resolving disputes without resort to a full fledged trial, but it also supports Indiana's strong judicial policy in favor of settlement agreements. *Manns v. State, Dep't of Highways*, 541 N.E.2d 929, 932 (Ind.1989); *Klebes v. Forest Lake Corp.*, 607 N.E.2d 978, 982 (Ind.Ct.App.1993).

12. In this case we are told that a neutral mediator presided and there were formal written terms of mediation that required that the insurers' representative[s] attending have full settlement authority and that all persons necessary to reach full settlement of the dispute be present. However-

er, the facts do not indicate whether the mediator met the requirements for the selection of mediators pursuant to ADR rule 2.4, whether the mediation was otherwise administered pursuant to these rules, or whether it was conducted wholly outside the rules.

## II. "Protection" of Subrogees Under the Workers' Compensation Statute

The second certified question is:

Under the portion of Indiana Code § 22-3-2-13 that provides, "consent shall not be required where the employer or the employer's compensation insurance carrier has been fully indemnified or protected by court order," does it constitute "protect[ion] by court order" such that consent is not required for the settlement of claims and satisfaction of judgment in proceedings, for the court to specifically preserve a compensation insurance carrier/lienholder's right to bring suit against its agent for settling its claim while enforcing an oral settlement of claims by reason of injury or death?

We understand this question to ask whether it constitutes "protection by court order" if a court specifically preserves the employer's or the employer's compensation carrier's right to bring suit against its agent for unauthorized settlement. The answer turns on interpretation of the Indiana Workers' Compensation Statute, specifically § 22-3-2-13, which provides in part:

No release or settlement of claim for damages by reason of injury or death, and no satisfaction of judgment in the proceedings, shall be valid without the written consent of both employer or the employer's compensation insurance carrier and employee or his dependents, except in the case of the employer or the employer's compensation insurance carrier, consent shall not be required where the employer or the employer's compensation insurance carrier has been fully indemnified or protected by court order.

IND.CODE § 22-3-2-13 (1993). In this case, the attorney may have been an agent for both the employer and the insurer and the insurer may have been an agent for the employer. Accordingly, we are uncertain whose claims would be preserved against whom. However, under any scenario, we do not regard preservation of a contingent claim as "protection" in the meaning of this section.[13]

The quoted provision in Indiana Code § 22-3-2-13 is the ninth of nine lengthy unnumbered paragraphs. It is best understood in light of the entire section. *Indiana State Highway Comm'n v. White*, 259 Ind. 690, 695, 291 N.E.2d 550, 553 (1973) (words and phrases of a single section are construed together with the other parts of the same section). The section recognizes that an employer or the employer's insurer may have rights by subrogation to any recovery against a third party for the employee's injury. For ease of reference we refer to the subrogee, whoever it is, as the "employer" in this discussion. The statute includes means—subrogation rights or liens on any recovery—for the employer to recover expenditures from a third party who is liable for the employee's injury. The section provides that if:

judgment is obtained and paid, and accepted or settlement is made . . . with or without suit, then from the amount received by the employee . . . there shall be paid to the employer . . . the amount of compensation paid to the employee . . . plus the medical, surgical, hospital and nurses' services and supplies and burial expenses. . . .

IND.CODE § 22-3-2-13 (1993). The employer may join any suit against the third party "so that all orders of court after hearing and judgment shall be made for [the employer's] protection." This joinder provision appears

13. The district court concluded that the terms of the mediation agreement requiring written consent were not controlling because Liberty Mutual waived that requirement. We are not asked and express no opinion whether the reasons the district court identified to effect a waiver of this term of mediation could also waive the written consent requirement of the statute. Nor do we express an opinion as to whether the consent of the insurer alone is sufficient under this statute. We note that the section is phrased in terms of the consent of "both the employer or the employer's compensation insurance carrier and the employee." As a grammatical and logical proposition, by referring to the "employer or the carrier," the statute can be read as requiring (a) the employee's consent and (b) either the employer's or the carrier's consent. This may make some practical sense because the carrier, as happened here, may be handling the claim for both its own subrogated interests and those of the employer. By requiring the consent of either and leaving it to the two to resolve any dispute over authorization, the General Assembly may have intended to facilitate consummation of settlements.

in the paragraph preceding the "protection" at issue. In this sense, the section "protects or indemnifies" the employer by creating a statutory obligation to pay the subrogated amounts to the employer. *See, e.g., Sowers v. Covered Bridge Tree Serv.,* 621 N.E.2d 1111, 1112 (Ind.1993) (implies that "protection" is protection in the form of seeking reimbursement by lien or subrogation; statute contemplates that the protection shall be afforded through court order); *New York Cent. R.R. Co. v. Milhiser,* 231 Ind. 180, 187, 106 N.E.2d 453, 457 (1952) (this section of the statute "is a protection provided for the employer"). "Protecting" the employer, by providing the employer with the means of assuring reimbursement, is along with preventing double recovery, one of the twin purposes of the section. *See id. and Freel v. Foster Forbes Glass Co.,* 449 N.E.2d 1148, 1151 (Ind.Ct.App.1983).

The section provides for only two means of settling a claim against a third party. The employer must either give written consent or be "fully indemnified or protected by court order." The reason the legislature required written consent as one alternative is obvious. Because settlement serves as a bar to further recovery against the third party, *State v. Mileff,* 520 N.E.2d 123, 126 (Ind.Ct.App. 1988), without a consent requirement, an employee could settle a lawsuit for an amount well below medical and disability costs and leave the employer with nowhere to turn for the additional money owed. Requiring the written consent of the employer is designed to protect an employer from being short-changed without its advance approval.

In the absence of written consent, a settlement is valid only if the employer is "indemnified or protected by court order." As a substitute for the consent requirement, this language is directed to the same purpose: making sure the employer is not deprived of its recovery. An employer will be protected if, for example, the monies owed are set aside for the employer by court order in an escrow account or a similar arrangement. *See, e.g., Kleeman v. Fragman Constr. Co.,* 91 Ill. App.3d 455, 46 Ill.Dec. 911, 915, 414 N.E.2d 1064, 1068 (1980) (interpreting similar statutory provision, court order approving settlement acknowledged employer's lien and stat-

ed that settlement would be set-off against lien); *Legler v. Douglas,* 26 Ill.App.2d 365, 167 N.E.2d 813, 819 (1960) (court held that [employer] was "protected" by court order recognizing [employer's] lien and granting the authority to deposit a settlement fund with the court until a hearing resolved the rights of the parties). These forms of protection by court order amount to complete protected assurance that the employer will be paid without further litigation. It is also significant that the term "protection" is used as a substitute for consent in tandem with "indemnification by court order," i.e., a court order directing reimbursement. This too implies reasonable assurance of reimbursement. In sum, "protection" means the employer is assured of recovery and consent is unnecessary.

Preservation of the right of the employer to sue its agent does not "indemnify" or "protect" the employer in this sense. The likelihood of recovery against the agent is far from a certainty. Not only would the employer have to prove breach of a duty by its carrier and/or attorney, but the employer must also establish that if there had not been a breach, either the agent would have settled for more money or the plaintiff would have maintained a successful claim against the defendant in court and recovered more than the amount settled for, net after all expenses of proceeding through this second dispute. The cost of pursuing such a claim is undoubtedly substantially greater than the cost of collecting from an escrow or recovery on a court ordered judgment. In short, this is not the sort of "protection" that the legislature envisioned. Accordingly, we answer that for purposes of the statute, it does not constitute "protection by court order" for a court merely to preserve the employer's or the employer's insurance carrier's right to sue the agent.

### Conclusion

We conclude that a client's retention of an attorney does not in itself confer implied or apparent authority on that attorney to settle or compromise the client's claim. However, retention does confer the inherent power on the attorney to bind the client to an in court

proceeding. For purposes of an attorney's inherent power, proceedings that are regulated by the ADR rules in which the parties are directed or agree to appear by settlement authorized representatives are in court proceedings. We also conclude that for purposes of Indiana Code § 22–3–2–13 it does not constitute "protect[ion] by court order" for a court specifically to preserve an employer's or an employer's insurance carrier's right to bring suit for breach of duty by its agent.

SHEPARD, C.J., and DICKSON, SULLIVAN and SELBY, JJ., concur.