In the
United States Court of Appeals
For the Seventh Circuit

No. 99-4007

MICHAEL G. POHL,

Plaintiff-Appellant,

v.

UNITED AIRLINES, INCORPORATED,

Defendant-Appellee.

Appeal from the United States District Court
for the Southern District of Indiana, Indianapolis Division.
No. 97 C 1246--Sarah Evans Barker, Chief Judge.

Argued April 7, 2000--Decided May 10, 2000

Before BAUER, EASTERBROOK, and ROVNER, Circuit
Judges.

ROVNER, Circuit Judge.  Some litigants in
pursuing settlement of their claims hold the
belief that they can change their mind at any
time before they actually sign the settlement
agreement. As this case illustrates, that
perception is often unfounded in the law.

The genesis of this case was a lawsuit by
Michael Pohl, an aircraft inspector for United
Airlines, against United alleging violations of
the Uniformed Services Employment and
Reemployment Rights Act (USERRA). The complaint
included three counts, alleging discrimination
based on his military status (Count 1),
retaliation (Count 2), and failure to properly
credit Pohl's employee stock ownership ("ESOP")
account for time spent fulfilling his duties in
the Reserves (Count 3). Eventually, the parties
began to discuss settlement, although there is a
wide divergence between Pohl's perception of the
discussions and that portrayed by his attorney
and opposing counsel. What is undisputed is that
the attorneys engaged in a number of settlement
discussions by telephone between December 15,
1998, and March 8, 1999, and eventually informed
the court that they had reached a settlement of
the entire case. Shortly thereafter, Pohl called
the court himself, and expressed surprise when
informed of the news of a full settlement. The

judge convened a status conference, at which time Pohl reviewed the written settlement proposal for the first time and refused to sign it. United then brought a motion to enforce the settlement, which Pohl opposed on the ground that his attorney did not have the authority to negotiate the settlement.

After holding an evidentiary hearing on the issue, the district court entered an opinion which granted enforcement of the settlement. Unfortunately, the court did not enter a separate judgment in the case as is required under Fed. R. Civ. P. 58. At oral argument, however, the parties both agreed that the opinion by the district court disposed of all issues, and that a separate judgment would merely have reflected the language in the opinion. Specifically, they agreed that enforcement of the settlement required dismissal of the case with prejudice, and that the settlement agreement itself would not have been incorporated into the judgment. Accordingly, under Bankers Trust v. Mallis, 435 U.S. 381 (1978) we may proceed to consider the appeal despite the technical violation of R. 58.

Pohl asserts that his attorney lacked the authority to negotiate a settlement of his case. Issues regarding the formation, construction, and enforceability of a settlement agreement are governed by local contract law, Carr v. Runyan, 89 F.3d 327 (7th Cir. 1996), and therefore we must look to the law of Indiana in deciding this claim. As the Indiana Supreme Court held in Koval v. Simon Telelect, 693 N.E.2d 1299, 1301 (Ind. 1998), in order to bind a client to a settlement, an attorney must have either express, implied, or apparent authority, or must act according to the attorney's inherent agency power. The Koval court further held, however, that retention of an attorney does not, in itself, confer implied or apparent authority to settle. Id. The authority to settle, therefore, derives from other actions of the client with respect to the attorney or third parties, including but not limited to express grants of actual authority. For instance,

[t]he client may not intend for the attorney to settle a claim but may nonetheless imply that intention to the attorney. If so, the client is bound by a resulting settlement. Further, both apparent authority and inherent agency power may be created by actions of the client in its dealings with third parties even if the attorney knows there is no actual authority. Under these circumstances, the client is bound even if it is a breach of the attorney's professional obligations to make the commitment.

Id. at 1303 n.6. The district court determined

that Pohl's attorney had actual authority to settle, and we review that decision only for abuse of discretion. Carr, 89 F.3d at 331; Wilson v. Wilson, 46 F.3d 660, 664 (7th Cir. 1995). The court reached that conclusion after conducting an evidentiary hearing, and the history of the negotiations and of the communications between Pohl and his attorney establishes that the court's determination is well-supported by the record.

The relevant history begins at a December 15, 1998, settlement conference with Magistrate Judge Shields. The discussions turned to Count 3, and United agreed to look into whether the ESOP account had been properly credited. The other counts were not discussed at any length. Pohl claims that was because they could not reach a consensus on those counts, but the attorneys maintain that the talks centered on Count 3 because the other counts had turned out to have little merit. It is of little import who is right. The parties left the settlement conference with the understanding that United would contact Pohl's attorney with the ESOP calculations. United did so, and agreed that the ESOP account had not been properly credited. The attorneys then discussed language for a settlement agreement. Among other provisions, the settlement required United to: agree to credit Pohl's ESOP account and provide documentation regarding the credits; promise not to retaliate against Pohl for filing the litigation; and pay Pohl's reasonable attorneys' fees. In return, Pohl would dismiss the entire complaint, release United from any liability for claims arising from the facts in the complaint except to the extent that those facts formed the basis for a claim under the Americans With Disabilities Act, 42 U.S.C. sec.sec. 12101 et seq., and maintain the confidentiality of the agreement.

The billing records from Pohl's attorney document ten phone calls between Pohl's attorney and either Pohl or his wife in the time period from December 15, 1998, to March 8, 1999. The records further reveal that before or after each one of those calls, Pohl's counsel was in contact with opposing counsel. On March 8, 1999, Pohl's attorney sent Pohl a letter confirming "the settlement of [Pohl's] current federal court case against United Airlines." It further discusses the recovery of attorneys' fees for the "military discrimination suit," and mentions that it does not include fees for a separate ADA claim that was not part of that case. According to Pohl's testimony at the evidentiary hearing, his reaction to the letter was "I thought, okay, great, they settled it, but what exactly is the settlement? Show me the settlement and show me

the proof. . . ." He claims that he still did not think that the settlement included all of the counts. Although he spoke with his attorney a number of times after receipt of the letter, including a meeting with him, Pohl never expressed any concerns regarding the possibility of a settlement, other than to request it in writing and to request the documentation concerning his ESOP account. As mentioned earlier, Pohl eventually refused to sign the settlement when it was presented to him at the status conference.

Based on that history, the district court rejected Pohl's claim that the settlement was reached without authority from him. The court specifically relied on the objective evidence of communications between Pohl and his counsel, which supported the testimony of Pohl's counsel that Pohl was informed of each aspect of the settlement and approved of each one. During the negotiation period from December 15 until March 8, there is an absolute correlation between phone calls by Pohl's counsel to opposing counsel, and calls by Pohl's counsel to Pohl on the same day. That supports the testimony of Pohl's counsel that he constantly communicated the proposed settlement terms to Pohl. Moreover, Pohl failed to register any objection with his counsel when informed by letter that the "case" was settled, even though he testified that when he first read the March 8 letter confirming the settlement he thought it might include the whole case. In fact, his first reaction was "okay, great, they settled it;" that is hardly the reaction one would expect of someone who has not given his attorney the authority to settle the case. Furthermore, as the court in Koval recognized, Pohl may be bound by the settlement if he implied an intention to settle the claim to his attorney, regardless of whether he actually intended to settle the claim. Koval, 693 N.E.2d at 1303 n.6. The testimony of Pohl's attorney, which the court credited, would have been enough to establish implied authority to settle, even if express authority had not been found. In light of the record, the district court certainly did not abuse its discretion in holding that the settlement was obtained with actual authority from Pohl and that Pohl was bound by it.

Pohl counters, however, that he believed that he had the ultimate authority to approve or disapprove the settlement, and that he was not bound until he signed off on it. Pohl points to a clause in the retainer agreement with his counsel, which he altered ostensibly to retain that authority. In Part X, the retainer agreement granted the Firm the "Power of Attorney to execute all documents connected with the claim .

. . including . . . settlement agreements . . . ." Pohl added the handwritten language "with my authorization" in the margin next to that clause because he and his wife "did not like the idea of [the Firm] having total authority to settle this matter without [their] intervention." That provision, however, merely specifies that his attorney may not settle the case without his authority. It does not require written authorization of a settlement. As we have already noted, the district court did not err in holding that Pohl authorized his attorney to settle the case. That oral authorization satisfied the handwritten clause, and provided his attorney with the actual authority to settle the case. Pohl's misplaced belief that he could back out of the settlement at any time prior to signing it does not entitle him to legal relief from a settlement negotiated with actual authority by his attorney.

Finally, Pohl attempts to raise a new argument on appeal, that the June 2 settlement agreement cannot be enforced because even if there was a meeting of the minds regarding settlement on February 24, the June 2 agreement did not properly memorialize that agreement. Pohl concedes that he never raised this issue in the district court, but argues that he was then arguing that there was no authority to enter into the February 24 agreement, and he had no reason at that time to argue that the June 2 agreement failed to reflect the terms agreed to on February 24. That argument is nonsensical. The issue before the district court was whether it should enforce the June 2 agreement. Pohl should have raised at that time any claims that he had that would affect the enforceability of that settlement agreement. It certainly should have been foreseeable to Pohl that he could lose on his argument regarding lack of authority, and that he should present any alternative arguments at that time. This circuit has held numerous times that arguments against the enforceability of settlement agreements are waived if not raised in the district court. Carr, 89 F.3d at 333; Wilson, 46 F.3d at 667; Laserage Technology Corp. v. Laserage Laboratories, Inc., 972 F.2d 799, 804 (7th Cir. 1992). In fact, even arguments raised in the district court may be waived if not presented in a timely manner, such as those raised for the first time in a motion for reconsideration. Wilson, 46 F.3d at 667. Pohl did not raise this argument at any time in the district court, and in fact expressly limited the issue before the court, stating: "I think we all understand that the only issue today is whether or not attorneys for Mr. Pohl had the authority to enter into this deal." Transcript of Evidentiary Hearing at 105. There are no

extraordinary circumstances present to avoid waiver. Laserage, 972 F.2d at 804. Accordingly, that argument is waived. We note, however, that the uncontradicted testimony of both attorneys was that the written agreement simply memorialized the terms agreed upon orally in February, and thus his claim would have been meritless even if properly raised.

Accordingly, the decision of the district court is

AFFIRMED.