In the

# United States Court of Appeals
### For the Seventh Circuit

No. 05-3184

SCHNEIDER NATIONAL CARRIERS,
INCORPORATED,

*Plaintiff-Appellant*,

*v.*

NATIONAL EMPLOYEE CARE SYSTEMS,
INCORPORATED, and CARMELO MENIST,

*Defendants-Appellees*.

Appeal from the United States District Court
for the Southern District of Indiana, Indianapolis Division.
No. 03 C 301—**Larry J. McKinney**, *Chief Judge.*

ARGUED FEBRUARY 6, 2006—DECIDED NOVEMBER 27, 2006

Before FLAUM, ROVNER and SYKES, *Circuit Judges.*

SYKES, *Circuit Judge.* This case concerns the lien rights of a worker's compensation carrier under Indiana law. An Indiana trucker was injured on the job in an accident with another trucker and received worker's compensation benefits. He then sued the tortfeasor's employer. The worker's compensation carrier initially sought intervention but later withdrew the motion after receiving assurances that its lien or subrogation rights under Indiana law would be protected. The employee and the tortfeasor then entered into a settlement without

notifying or obtaining the consent of the worker's compensation carrier. This was a violation of IND. CODE § 22-3-2-13, which specifically requires the written consent of the worker's compensation carrier in order for a settlement to be valid.

The settlement agreement provided that the tortfeasor's employer would assume responsibility for negotiating with the worker's compensation carrier over its lien rights and promised to defend and indemnify the injured trucker against any liability or judgment for the carrier's lien. The present suit was filed when these negotiations failed. The district court ordered judgment in favor of the worker's compensation carrier against the tortfeasor's employer on the basis of IND. CODE § 22-3-2-13 and the language in the settlement agreement by which the tortfeasor's employer assumed responsibility for any judgment regarding the carrier's lien rights. We affirm.

## I.  Background

Carmelo Menist is an Indiana truck driver who was injured in a work-related collision with a truck driven by an employee of plaintiff Schneider National Carriers, Inc. ("Schneider"). National Employee Care Systems ("NECS") is the third-party administrator for Carolina Casualty Company, the worker's compensation carrier for Menist's employer, Burlington Motor Carriers. Following the accident, Menist received approximately $116,000 in worker's compensation benefits from NECS.

Menist then sued Schneider in state court in Pennsylvania, where the accident occurred, and the case was removed to the United States District Court for the Middle District of Pennsylvania. NECS moved to intervene in the suit in order to protect its lien or subrogation rights, but Schneider opposed the motion, arguing that intervention was unneces-

sary because Menist's attorney "has acknowledged the lien or subrogation right at issue, and has fulfilled his duty to the subrogation carrier in writing that the subrogation right will be honored, protected and reimbursed from settlement proceeds."[1] Before the district court ruled on the intervention motion, NECS entered into a "Stipulation of Subrogation Lien" agreement with Menist stating that Menist would "recognize and agree to honor the subrogation lien [of NECS] pursuant to and consistent with the aforementioned Pennsylvania and Indiana law." For its part, NECS agreed to withdraw its intervention motion upon execution of the stipulation, and promptly did so. Schneider was not a party to the stipulation.

Menist and Schneider then settled the lawsuit for $85,000—substantially less than the $116,000 in worker's compensation benefits NECS had paid. NECS was not a party to the settlement agreement, did not participate in settlement discussions, and did not give its consent to the settlement as required by IND. CODE § 22-3-2-13. Despite the presettlement representations of Schneider and Menist that NECS's lien rights would be "honored" and "protected," NECS was never paid any portion of the settlement proceeds by either Menist or Schneider. Instead, the settling parties provided in their written settlement agreement that Schneider would assume responsibility for negotiating with NECS regarding its lien rights and indemnify and defend Menist against any lien claim by NECS. More specifically, the settlement agreement provided that Schneider would:

> [N]egotiate with [NECS] to the extent that [NECS] has paid for medical services and income loss benefits

---

[1] Schneider's position was based upon correspondence in the record from Menist's attorney to NECS stating in part: "I have received your *notice of subrogation claim* and will see that your claim is protected. Your claim will be paid upon distribution of any funds from the settlement proceeds of the claim . . . ."

rendered to Mr. Menist as a result of alleged injuries and damages that Mr. Menist contends was [sic] causally related to the May 28, 1999 accident . . . . If [Schneider] cannot negotiate a reasonable settlement with [NECS,] [Schneider] agree[s] to defend any lawsuit filed against [Menist] . . . seeking reimbursement for expenses incurred as a result of this accident. [Schneider] hereby promise[s] to satisfy any judgment which might result from such a lawsuit but only to the extent of fault assessed against [Schneider] (by judgment or stipulation), and only to the extent that their medical expenses are reasonable, necessary, customary and causally related to the accident of May 28, 1999 . . . .

After the case was dismissed by stipulation on the basis of the settlement, attorneys representing Schneider and NECS discussed payment of NECS's lien claim, as contemplated by the settlement agreement. It appears, however, that negotiations broke down on the issue of whether the lien amount was reasonable, necessary, and caused by Schneider's employee's negligence. The record does not disclose the specifics of the dispute; we are told only that the negotiations between Schneider and NECS were unsuccessful in resolving NECS's lien claim.

Schneider then filed the present action against NECS and Menist seeking a judicial declaration of its rights and obligations vis-à-vis NECS and Menist with respect to the worker's compensation lien.[2] NECS counterclaimed against Schneider and crossclaimed against Menist seeking enforcement of its lienholder rights and recovery from either Schneider or Menist. The parties agreed that Indiana law applied and that no material facts were in dispute and submitted the case to the district court for resolution on crossmotions for summary judgment.

---

[2]  Menist has not appeared in this action.

The district court awarded summary judgment to NECS and against Schneider and Menist jointly and severally in the amount of $56,666.66, representing the $85,000 settlement minus the one-third contingency fee that would have gone to Menist's attorney if the settlement had been properly handled in the first place. Based on the indemnity provision in the settlement agreement, the district court held that Schneider was responsible for paying the judgment. Schneider appeals, arguing that NECS waived its subrogation and lien rights by failing to intervene in the suit against Schneider or timely institute its own suit as Menist's subrogee. Alternatively, Schneider argues that NECS is limited to recovering its lien amount from Menist, not Schneider, because Schneider was under no duty to protect NECS's interests and any promises it made Menist to the contrary were invalid.

## II. Discussion

### A. Indiana Law

Under Indiana law (which the parties agree applies here), NECS's lien rights are clearly established by operation of IND. CODE § 22-3-2-13, which provides in pertinent part:

> [T]he injured employee . . . may commence legal proceedings against the other person to recover damages notwithstanding the . . . compensation insurance carrier's payment of . . . compensation . . . . In that case, however, if the action against the other person is brought by the injured employee . . . and . . . settlement is made with the other person, either with or without suit, then from the amount received by the employee . . . there shall be paid to the . . . employer's compensation insurance carrier . . . the amount of compensation paid to the employee . . . .
>
> . . . .

If the injured employee . . . shall agree to receive compensation from . . . the employer's compensation insurance carrier . . . the employer's compensation insurance carrier *shall have a lien upon any settlement award* . . . out of which the employee might be compensated from the third party. (Emphasis added.)

IND. CODE § 22-3-2-13, paras. 1, 4. The statute protects a worker's compensation carrier's lien rights by requiring the lienholder's approval of any settlement between the injured employee and the third-party tortfeasor: "No release or settlement . . . shall be valid without the written consent of the [insurer] . . . , except . . . consent shall not be required where the [insurer] has been fully indemnified or protected by court order." IND. CODE § 22-3-2-13, para. 9.

The Supreme Court of Indiana has described the purpose of this statute as follows:

The section provides for only two means of settling a claim against a third party. The employer must either give written consent or be 'fully indemnified or protected by court order.' The reason the legislature required written consent as one alternative is obvious. Because settlement serves as a bar to further recovery against the third party, *State v. Mileff*, 520 N.E.2d 123, 126 (Ind. Ct. App. 1988), without a consent requirement, an employee could settle a lawsuit for an amount well below medical and disability costs and leave the employer with nowhere to turn for the additional money owed. Requiring the written consent of the employer is designed to protect an employer from being shortchanged without its advance approval.

*Koval v. Simon Telelect, Inc.*, 693 N.E.2d 1299, 1309 (Ind. 1998). The *Koval* court also held that the statute serves to prevent double recovery by the injured employee and provides a mechanism for an employer (or its worker's compensation insurance carrier) to "be paid without further

litigation." *Id.* (" 'Protecting' the employer, by providing the employer with the means of assuring reimbursement, is along with preventing double recovery, one of the twin purposes of the section.").

Finally, the statute permits, but does not require, an employer (or its worker's compensation carrier) to join in an action commenced against the third party: "The employer may, within ninety (90) days after receipt of notice of suit . . . join in the action upon his motion so that all orders of court after hearing and judgment shall be made for his protection." IND. CODE § 22-3-2-13, para. 8.

## B.  Intervention and the Stipulation of Subrogation Lien Agreement

Schneider's first attack on the district court's decision is to argue that NECS waived any lien claim by choosing not to intervene as a party in the Pennsylvania lawsuit. Schneider contends that because intervention was available to NECS as a means of achieving judicial protection of its rights, NECS's failure to intervene should preclude it from looking to the court to save it from its own procedural misstep. Schneider makes repeated reference to NECS's "failure to protect its lien" and argues that in the absence of affirmative action by NECS to protect its own interests, it was not incumbent upon either Schneider or Menist to "look out for" NECS during the settlement negotiations.

No doubt in hindsight NECS regrets that it withdrew its intervention motion in the Pennsylvania action. But there is nothing in the Indiana statute or its interpretive case law that makes intervention anything other than permissive; there is no authority for the proposition that intervention is a *necessary prerequisite* to the operation of the statutory lien rights (although it may be the most efficient way to protect those rights). Indeed, an insurer's lien rights arise by operation of the statute itself without any requirement

of a positive act on the part of the insurer. Schneider acknowledged as much in its opposition to NECS's motion to intervene in the Pennsylvania suit. There, Schneider asserted as follows: "It is specifically denied that the worker's compensation carrier herein must intervene to protect their [sic] subrogation rights."

Schneider cannot have it both ways. NECS's lien rights, and the requirement that Menist and Schneider obtain NECS's written consent to the settlement, were not dependent upon NECS's intervention in the lawsuit. NECS did not waive its lien rights by withdrawing its motion to intervene. Schneider and Menist were in no way relieved of the requirements of § 22-3-2-13 by virtue of NECS's withdrawal of its intervention motion.

Similarly unpersuasive is Schneider's insistence that NECS's decision to enter into the "Stipulation of Subrogation Lien" with Menist operated as a waiver or otherwise relieved Schneider of any obligation to comply with the requirements of the statute. It is true that Schneider was not a party to this stipulation, but the document essentially amounts to nothing more than an unnecessary agreement by Menist that he will "recognize" and "respect" the lien rights that already existed *by operation of the statute*, with or without any stipulation. Both Menist and Schneider were required to "recognize" and "honor" NECS's lien (to use the language of the stipulation) by virtue of the statute creating it. We fail to see why or how Menist's written agreement to respect NECS's statutory lien rights could be read as a negative injunction relieving Schneider of any duty to do so.

## C. Subrogation

Under IND. CODE § 22-3-2-13, if an employee brings an action against the third-party tortfeasor and the action is "dismissed," the insurance carrier has one year following

the dismissal within which to "collect in [its] own name or in the name of the injured employee . . . from the other person in whom legal liability for damages exists, the compensation paid or payable to the injured employee . . . ." IND. CODE § 22-3-2-13, para. 5. As is pertinent to the circumstances here, the Indiana courts have interpreted this provision as precluding a worker's compensation carrier from bringing a separate action in its own name pursuant to the right of subrogation where the employee has already maintained a "successful action," that is, commenced a lawsuit and brought it "to a successful conclusion by judgment or . . . pre-trial settlement." *Norris v. U.S. Fid. & Guar. Co.*, 436 N.E.2d 1191, 1193-94 (Ind. Ct. App. 1982) ("[W]here the employer's compensation insurance carrier is precluded from bringing suit by a settlement or judgment obtained by the injured employee against a third-party tortfeasor, subrogation is not at issue."). In other words, where the injured employee sues and is successful—success taking the form of either judgment or settlement—the insurance carrier "is a lienholder, not a subrogee." *Id.* at 1194.

Schneider argues that to the extent that its settlement of the lawsuit with Menist was invalid under § 22-3-2-13 for failing to obtain NECS's consent, the Pennsylvania lawsuit cannot be deemed a "successful action" by Menist and NECS was required to initiate a separate subrogation action within one year of the dismissal of the suit. Because NECS did not initiate a subrogation action within a year of the stipulated dismissal of Pennsylvania suit, Schneider maintains NECS has forfeited any right to assert its statutory lien rights.

This argument is clever but ultimately unpersuasive. Menist negotiated a settlement of his Pennsylvania lawsuit with Schneider, acquiring $85,000 and an agreement by which Schneider indemnified him against any attempt by NECS to enforce its lien rights against the settlement

proceeds. This was a "successful conclusion" of the action under any reasonable understanding of the phrase. Schneider cites no authority for the proposition that settling parties' noncompliance with the insurer consent requirement of § 22-3-2-13 extinguishes the insurer's statutory lien rights, leaving only the subrogation remedy. Accepting Schneider's argument would obliterate a central purpose of the statute, which is to establish and protect the reimbursement rights of worker's compensation insurers without the need for additional litigation. *See Koval*, 693 N.E.2d at 1309. If Schneider is right, injured employees and tortfeasors would be encouraged to quietly settle their cases without notifying or consulting the worker's compensation lienholder—in other words, to intentionally disregard the statutory consent requirement—in the hope that the carrier will not discover the settlement in time to intervene to invalidate the settlement or assert a subrogation claim. Approving this interpretation would run counter to the statute's objectives as identified by the Indiana Supreme Court in *Koval*.

## D.  Remedy

Schneider's attacks on NECS's lien rights having failed, the only remaining question is remedy. The district court concluded that because NECS had statutory lien rights and the settling parties did not comply with the insurer consent requirement of § 22-3-2-13, they were jointly and severally liable to NECS in the amount of $56,666.66—the $85,000 settlement amount minus the one-third contingency attorney's fee. Then, because the settlement agreement also required Schneider to defend and indemnify Menist and to satisfy any judgment in favor of NECS, the district court held that Schneider was responsible for paying the judgment.

Schneider argues that this remedy was improper in that NECS's lien attached only to the $85,000 (minus attorney's fees) already in Menist's possession, and that Schneider cannot be held responsible for an additional $56,666 above and beyond what it already paid to Menist. Schneider contends that any judgment in favor of NECS should have been against Menist alone. Schneider bases this argument on the following: (1) the Stipulation of Subrogation Lien agreement in which Menist, not Schneider, agreed to "honor" NECS's lien rights; (2) the language in § 22-3-2-13 stating that in the event of settlement, the insurer shall be paid "from the amount received by the employee"; and (3) Indiana law to the effect that "[a] valid lien created on real or personal property is enforceable against the property in the hands of any person with notice of the lien who subsequently acquires it," *State v. Mileff*, 520 N.E.2d 123, 128 (Ind. Ct. App. 1988). Schneider also argues that the failure to obtain NECS's consent to the settlement voids the agreement—including the indemnification promise made by Schneider to Menist.

Schneider's arguments are foreclosed by the simple fact that in settling the lawsuit, Schneider bound itself not to assert the very position it now takes. The language of the settlement agreement plainly obligates Schneider to assume all responsibility for satisfying NECS's lien rights, regardless of whether other legal principles would have operated to make Menist liable to NECS. Perhaps, absent the specific language of this agreement, NECS would be required to look to Menist for recovery on its lien, but in this case the settlement agreement specifically shifted this responsibility to Schneider. The agreement specifies that *Schneider*, not Menist, would henceforward assume responsibility for negotiating a "reasonable settlement" with NECS, and failing that, would indemnify Menist against any future judgment in NECS's favor. The agreement does *not* provide, either expressly or by implication, that Schneider, in

assuming these responsibilities, retained a right to disclaim liability for NECS's lien recovery by virtue of having paid Menist. Indeed, quite the opposite is true: The agreement plainly contemplates that Schneider would pay, *above and beyond* the $85,000 it paid to Menist, to either "settle" with NECS or satisfy any judgment against Menist in NECS's favor.

Having agreed to these terms, with full awareness of the existence and amount of NECS's lien and the fact that NECS was improperly excluded from the settlement negotiations in violation of Indiana law, Schneider cannot now argue that NECS must look to Menist alone. The bottom line is Schneider and Menist knowingly settled the case for less than the amount of the worker's compensation lien without notifying NECS and placed the risk of liability to NECS squarely on Schneider. The planned-for contingency now having arrived, Schneider cannot use its own noncompliance with the consent requirement of the Indiana statute as a sword to defeat its liability to NECS.

The judgment of the district court is AFFIRMED.

No. 05-3184                                                        13

A true Copy:

     Teste:


_____
*Clerk of the United States Court of*
*Appeals for the Seventh Circuit*