Dan J. JOVANOVIC, Plaintiff–
Appellant,

v.

IN–SINK–ERATOR DIVISION OF EM-
ERSON ELECTRIC COMPANY,
Defendant–Appellee.

No. 98–3726.

United States Court of Appeals,
Seventh Circuit.

Argued May 18, 1999.

Decided Jan. 7, 2000.

Christopher V. Langone (argued), Chicago, IL, for Plaintiff–Appellant.

Fred G. Groiss (argued), Shannon B. Farrell (briefed), Quarles & Brady, Milwaukee, WI, Jeffrey R. Carius, Emerson Electric Co., St. Louis, MO, for Defendant–Appellee.

Before COFFEY, KANNE and DIANE P. WOOD, Circuit Judges.

COFFEY, Circuit Judge.

The plaintiff-appellant, Dan Jovanovic, brought this action against the defendant-appellee, In–Sink–Erator Division of Emerson Electric Company ("ISE") of Racine, Wisconsin, alleging a violation of the Americans with Disabilities Act ("ADA"), 42 U.S.C. § 12111 *et seq.*, when ISE, according to Jovanovic, terminated his employment because he was suffering from asthma and Barrett's esophagus.[1] The trial court ordered that the materials Jovanovic submitted in response to the summary judgment motion be stricken from the record because Jovanovic failed to file a timely response to ISE's motion for summary judgment. The judge then granted ISE's motion for summary judgment. We affirm.

## I. BACKGROUND

Jovanovic began working at ISE, a manufacturer of garbage disposals and hot water dispensers, on February 13, 1984, as a tool and die maker. Tool and die makers at ISE's Racine facility have the responsibility to respond to maintenance and repair needs for equipment throughout the plant. As the district court noted, "it is 'their job to keep the plant running.' ... Tool and die makers possess technical skills which are specific to their job.... Few of these skilled workers are employed in the plant, and if absent they are not easy to replace." During the time that Jovanovic was employed, ISE had an attendance policy which stated that an employee would be considered "excessively absent" if that employee was absent at a rate one full percentage point greater than the plant absentee average, provided that such absence rate exceeded seven days in a twelve-month period.[2]

Jovanovic received his first warning regarding his erratic attendance on September 27, 1985. ISE thereafter warned Jovanovic on December 15, 1986, September 25, 1991, November 11, 1991, May 19, 1992, January 18, 1993,[3] and March 25, 1993.[4] On March 30, 1993, Jovanovic reported late to work and ISE terminated his employment.

After his termination, Jovanovic filed this suit alleging that ISE discharged him

---

1. Also called Barrett's syndrome—a peptic ulcer of the lower esophagus. These medical conditions frequently caused Jovanovic to be absent from work, but in no way impaired his ability to perform tool and die work when he was present at ISE.

2. During Jovanovic's period of employment, he was frequently either late (ISE does not give the exact number of times that Jovanovic arrived late) or absent from work. For example, in fiscal year 1991, the Racine plant's absentee rate was approximately 1.31%, as compared to Jovanovic's rate of 3.35%. In fiscal year 1992, the Racine plant's absentee rate was approximately 1.25%, while Jovanovic's rate was 8.5%.

3. At the time of the January 18, 1993 warning, ISE cautioned Jovanovic that his next attendance infraction would likely result in disciplinary action, including discharge.

4. Jovanovic received his final warning on March 25, 1993, for poor attendance based on his having missed 24 days in the last 12 months.

because of his disability in violation of the ADA. Shortly after the case was assigned, the trial judge entered a scheduling order establishing discovery and filing deadlines. On March 12, 1997, Jovanovic's counsel informed the court that he was in the process of gaining admission to the Eastern District of Wisconsin (he claimed he needed a certification of good faith from the Illinois Supreme Court) and requested that discovery be extended until May 31, 1997, and the deadline for dispositive motions be extended to June 15, 1997. On April 23, 1997, Jovanovic's counsel informed the district court that he had filed the necessary papers for admission and was awaiting a response. Satisfied that Jovanovic's counsel had moved for admission, the court granted Jovanovic's motion to amend the scheduling order on April 24, 1997.

Pursuant to the scheduling order, ISE moved for summary judgment on June 12, 1997. Although Jovanovic's deadline for responding was July 17, 1997, he failed to file a response, much less request an extension, until July 22, when he asked for extra time to respond (until August 15) and requested leave to take eight additional depositions. When making this extension request, Jovanovic's counsel informed the trial court that, contrary to his prior representations, there was no application for his admission to practice in the Eastern District of Wisconsin on file.[5] Because Jovanovic's counsel was unable to substantiate his claim that he had previously submitted an application for admission to the Eastern District of Wisconsin, the judge concluded that he could "only assume no such application was filed."

Before the judge ruled on his motion to extend time to respond, Jovanovic filed a response to ISE's summary judgment motion on August 22, 1997. On October 31, 1997, the trial judge denied Jovanovic's motion to extend time to respond. The court considered ISE's motion for summary judgment based only on the record before it, which did not include Jovanovic's response brief and supporting materials, because they had been stricken from the record. The district judge granted ISE's summary judgment motion. Jovanovic appeals.

## II. ISSUES

On appeal, we consider whether the trial court abused its discretion in declining to consider the papers submitted by Jovanovic in opposition to ISE's motion for summary judgment. We also consider whether the court erred in granting summary judgment to ISE on Jovanovic's claim that ISE allegedly discharged him because of his disability.

## III. DISCUSSION

### A. Refusal to consider Jovanovic's untimely response

■ Jovanovic initially contends that the trial court abused its discretion in declining to consider his response to ISE's summary judgment motion. While counsel does not contest that the papers were untimely, nor even that the request for an extension was untimely, he asserts that, given the circumstances surrounding the tardiness of his filing, the trial judge should have found that the untimely filing was the result of "excusable neglect." Jovanovic's counsel explains that the materials were late because he had a state court trial which was advanced for trial due to the failing health of a party to that litigation and because of a family crisis to which he had to attend.

■ We review a trial court's refusal of a request for an extension for an abuse

---

5. Jovanovic's counsel maintains that he had in fact previously submitted an application, but that it must have been lost by the Clerk for the Eastern District of Wisconsin. However, he was unable to present any supporting evidence, such as a copy of an application, a check, or an accompanying correspondence, demonstrating that he actually filed an application with the clerk.

of discretion. *See Gonzalez v. Ingersoll Milling Mach. Co.*, 133 F.3d 1025, 1030 (7th Cir.1998). "When reviewing challenges for abuse of discretion in district court scheduling, matters of trial management are for the district judge and we intervene only when it is apparent the judge acted unreasonably." *Id.*(citing *Brooks v. United States*, 64 F.3d 251, 256–57 (7th Cir.1995)).

In denying Jovanovic's request for an extension, the trial court cited: 1) the fact that the applicable deadlines had been set and extended at Jovanovic's urging; 2) that even Jovanovic's request for an extension of time on August 22, 1997, was not filed within the deadline; and 3) that Jovanovic's counsel acknowledged that, contrary to his prior representations to the court, he had not yet been admitted to practice in the Eastern District of Wisconsin. The judge also noted that Jovanovic's motion failed to set forth adequate reasons for his failure to file either his response or a request for an extension within the July 17, 1997 deadline.

After the court issued its original decision, Jovanovic filed a Motion for Reconsideration, claiming that the trial judge erred in failing to apply the factors set forth in *Pioneer v. Brunswick Assocs. Ltd. Partnership*, 507 U.S. 380, 113 S.Ct. 1489, 123 L.Ed.2d 74 (1993), to determine whether Jovanovic's counsel acted out of "excusable neglect." On September 25, 1998, the judge denied Jovanovic's motion for reconsideration. The trial court specifically applied the *Pioneer* factors, including an evaluation of the danger of prejudice to the non-movant, the length of the delay and its potential impact on the court

proceedings, the reasons for the delay, including whether it was within the control of the movant, and whether the movant acted in good faith. *Id.* at 395, 113 S.Ct. 1489.[6]

After reviewing the record, we refuse to hold that the district court abused its discretion in declining to consider Jovanovic's untimely response. Jovanovic's counsel was late in filing papers with the court on a number of occasions, he missed deadlines that he had requested, and he misrepresented to the court the status of his application for admission to practice before it and then used the fact that he was not admitted as an excuse for his untimely filing. Because we hold that the trial judge acted within his discretion in denying Jovanovic's request for an extension, Jovanovic's response brief and supporting materials are not a part of this record on appeal.

### B. Jovanovic's Disparate Treatment Claim

■ Jovanovic contends that the district court erred in granting ISE's summary judgment motion on the grounds that Jovanovic was not a qualified individual with a disability under the ADA because he could not perform the essential job function of regular attendance. He argues that the record presented by ISE in support of its motion does not support the court's finding that job attendance was an essential function of the tool and die maker job. Instead, he claims, that when the judge considered an affidavit submitted by Jovanovic's supervisor, the court went beyond ISE's proposed findings of fact and into the full record to reach his decision.

---

6. After applying the *Pioneer* factors, the court once again ruled that the conduct of Jovanovic's counsel failed to amount to "excusable neglect." It explained that granting Jovanovic's extension request, which included a request to reopen discovery, would prejudice ISE by rendering its summary judgment motion moot and that the reasons provided for the late filing were within the control of Jovanovic's counsel; for example, the state court trial he referred to ended July 14, 1997, three days before the response deadline, yet he still failed to timely file his motion for an extension. The district judge also found that Jovanovic's counsel was guilty of not acting in good faith, specifically citing his misrepresentation to the court regarding the status of his application to practice in the Eastern District of Wisconsin. Finally, the judge noted that counsel failed to meet the deadlines that he (counsel) had selected.

Jovanovic asserts that, in so doing, the trial judge opened up the entire record to review and, upon review of the entire record, should have denied ISE's motion because the record reveals disputed material facts.

We review a district court's grant of summary judgment *de novo*. *See Gonzalez*, 133 F.3d at 1031. The record and all reasonable inferences that may be drawn from it are viewed in the light most favorable to Jovanovic. *See id.* Summary judgment is only appropriate if the materials contained in the record demonstrate that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law. *See* Fed.R.Civ.P. 56(c).[7]

Jovanovic contends that even absent consideration of his materials in response to ISE's motion, the trial court's grant of summary judgment was improper. He asserts that there is no evidence in the record to support the court's conclusion that he is not a "qualified individual with a disability," which is defined by the ADA as a disabled individual who can, with or without reasonable accommodation, perform the essential functions of a position.[8] *See* 29 C.F.R. § 1630.2(m). We disagree.

Initially, we note that Jovanovic failed to request any form of accommodation from ISE. In *Taylor v. Principal Fin. Group, Inc.*, 93 F.3d 155, 164–65 (5th Cir.1996) (emphasis added), the Fifth Circuit noted that

"[s]ome impairments may be disabling for particular individuals but not for others, depending on the stage of the disease or the disorder, the presence of other impairments that combine to make the impairment disabling or any number

of other factors." 29 C.F.R. 1630.2(j), App. (1995). Thus, while a given disability may limit one employee (and therefore necessitate a reasonable accommodation), it may not limit another. For this reason, the ADA does not require an employer to assume that an employee with a disability suffers from a limitation. In fact, better public policy dictates the opposite presumption: that disabled employees are not limited in their abilities to adequately perform their jobs. Such a policy is supported by the E.E.O.C.'s interpretive guide: employers "are prohibited from restricting the employment opportunities of qualified individuals with disabilities on the basis of stereo types and myths about the individual's disability. Rather, the capabilities of qualified individuals must be determined on an individualized, case by case, basis." 29 C.F.R. 1630.5, App. (1995).....*Accordingly, it is incumbent upon the ADA plaintiff to assert not only a disability, but also any limitation resulting there from.*

\*     \*     \*     \*     \*     \*

*Thus, it is the employee's initial request for an accommodation which triggers the employer's obligation to participate in the interactive process of determining one.... If the employee fails to request an accommodation, the employer cannot be held liable for failing to provide one.*

Although this court has never adopted the triggering requirement in *Taylor*, several cases from this circuit have commented on a plaintiff's failure to request an accommodation.

---

7. Despite the fact that we agree with Jovanovic that the trial judge looked beyond ISE's moving papers and was, therefore, obligated to examine the entire court record on summary judgment to ensure that it revealed no material factual disputes, Jovanovic's untimely brief, Rule 6.05 response, and attached affidavits are not included in this record. *See Uhl v. Zalk Josephs Fabricators, Inc.*, 121 F.3d 1133, 1135 (7th Cir.1997) ("Needless to say, a

district judge isn't obligated to consider untimely presented evidence, and neither are we").

8. For purposes of this decision, we assume, without analysis, that Jovanovic is disabled as defined by the Americans with Disabilities Act.

■⅃ In *Hunt–Golliday v. Metropolitan Water Reclamation Dist. of Greater Chicago*, 104 F.3d 1004, 1013 (7th Cir. 1997), we noted that the plaintiff had "failed to present anything at all regarding whether she informed [the defendant] of her alleged … disability and her need for accommodation, let alone what should have or could have been done for her." Similarly, in *Beck v. University of Wis. Bd. of Regents*, 75 F.3d 1130, 1134 (7th Cir.1996), this court stated that "[a]n employee has the initial duty to inform the employer of a disability before ADA liability may be triggered for failure to provide accommodations—a duty dictated by common sense lest a disabled employee keep his disability a secret and sue later for failure to accommodate." Finally, in *Bultemeyer v. Fort Wayne Community Schools*, 100 F.3d 1281, 1285 (7th Cir.1996), we stated that where an employee has mental disabilities the communication process becomes more difficult and the employer must meet the employee halfway—if the employee needs an accommodation but is unable to ask for one, the employer should do what it can to help. *Id.* An employer cannot always expect an employee with a mental illness to know that he must specifically say "I want a reasonable accommodation." *Id.*; *see also* 29 C.F.R. § 1630.2(*o*)(3) ("To determine the appropriate reasonable accommodation it maybe necessary for the covered entity to initiate an informal, interactive process with the qualified individual with a disability in need of the accommodation. This process should identify the precise limitations resulting from the disability and potential reasonable accommodations that could overcome those limitations."). Although there will be exceptions to the general rule that an employee must request an accommodation, *see, e.g., Bultemeyer*, 100 F.3d at 1285, we believe that the standard rule is that a plaintiff must normally request an accommodation before liability under the ADA attaches. *See also Mole v. Buckhorn Rubber Products, Inc.*, 165 F.3d 1212, 1218 (8th Cir.), *cert. denied*, —— U.S. ——, 120 S.Ct. 65, 145 L.Ed.2d 56 (1999) ("Only [the employee] could accurately identify the need for accommodations specific to her job and workplace."); *Crandall v. Paralyzed Veterans of Am.*, 146 F.3d 894 (D.C.Cir.1998) (Employee with bipolar disorder could not state a claim under the Rehabilitation Act when he never told his employer of his mental illness and never requested accommodations.).

■ We need not rest our decision on the fact that Jovanovic failed to request an accommodation because his erratic attendance record made it impossible for him to perform the essential functions of the job.[9] *See, e.g., Waggoner*, 169 F.3d at 484 ("in most instances the ADA does not protect persons who have erratic, unexplained absences, even when those absences are the result of a disability" and "attendance at the job site is a basic requirement of most jobs"); *Corder v. Lucent Technologies, Inc.*, 162 F.3d 924, 928 (7thCir.1998) (attendance was an implied essential function of a job as an account support representative); *Nowak v. St. Rita High School*, 142 F.3d 999, 1003 (7th Cir.1998) (noting that a teacher "who does not come to work cannot perform the essential functions of his job"). As noted above, Jovanovic had missed 24 days in the past 12 months. Common sense dictates that regular attendance is usually an essential function in most every employment setting; if one is

---

9. As the district judge noted, "the only imaginable accommodation would be an open-ended schedule that would allow Jovanovic to come and go as he pleased." We would be hard-pressed to imagine a manufacturing facility that could operate effectively when its employees are essentially permitted to set their own work hours, and we thus reject such a schedule as an unreasonable accommodation under the circumstances of this case. *See Waggoner v. Olin Corp.*, 169 F.3d 481, 485 (7th Cir.1999) (holding "as a matter of law" that employee's desire "to miss work whenever she felt she needed to and apparently for so long as she felt she needed to" was not a reasonable accommodation for someone employed as a production worker).

not present, he is usually unable to perform his job. This is especially true in factory positions, such as Jovanovic's, where the work must be done on the employer's premises; maintenance and production functions cannot be performed if the employee is not at work.

We need not go so far as to say that regular attendance is an essential function of *every* job in rendering our decision today, nor do we hold that an individual with erratic attendance can never be a qualified individual with a disability under the ADA. *See Waggoner*, 169 F.3d at 485 ("working part-time is an accommodation which can and often should be made" and "[i]n some jobs ... working at home for a time might be an option"). However, our review of the entire record in this case supports the district court's finding that regular attendance is an essential function of the tool and die maker position at ISE.

In his affidavit, Jovanovic's former supervisor, Robert Running, attests:

> [t]hat the primary function of the tool room is to see that the machinery is maintained in good repair throughout the facility; that it is a 24–hour a day operation; and that it is essential to be able to rely on the regular attendance of tool and die makers which is a relatively small group of employees servicing approximately 850 workers.

Like the production job in *Waggoner*, the account representative job in *Corder*, and the teaching position in *Nowak*, it is clear that the tool and die maker position is one that must be performed at ISE and on a regular basis. If a tool and die maker is not on the premise, he cannot carry out his employment responsibilities for which he was hired. Both Running's affidavit and ISE's summary judgment papers support this conclusion, and nothing in the record contradicts it.

The record before us supports the trial court's conclusion that regular and timely attendance is an essential function of the tool and die maker position at ISE. It also supports the court's conclusion that

Jovanovic could not perform that function of his job. Further, because there is no evidence that Jovanovic ever requested an accommodation, nor that any reasonable accommodation would have enabled him to perform his job, the district court's conclusion that Jovanovic is not a qualified individual with a disability was not in error. Therefore, the trial judge's grant of summary judgment to ISE on Jovanovic's ADA claims was proper.

Accordingly, the judgment of the district court is

Affirmed.