**Michael G. POHL, Plaintiff,**

v.

**UNITED AIR LINES, INC., Defendant.**

**No. IP99–0611–C–B/S.**

United States District Court,
S.D. Indiana,
Indianapolis Division.

April 11, 2002.

vehicle for asserting Batteast's section 1981 and 1985 claims against a public entity acting under color of state law.

Lawrence M. Reuben, Attorney at Law, Indianapolis, IN, for Plaintiff.

John R. Maley, Barnes & Thornburg, Indianapolis, IN, David J. Rowland, Seyfarth Shaw Fairweather and Geraldson, Chicago, IL, for Defendant.

### ORDER GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT AND DENYING PLAINTIFF'S VARIOUS MOTIONS

BARKER, District Judge.

Michael Pohl, an aircraft inspector for United Airlines, Inc. ("United") at United's Indianapolis Maintenance Center ("IMC"), brought this case against Defendant alleging violations of the Americans with Disability Act, 42 U.S.C. § 12101, *et seq.* The original complaint includes claims for failure to reasonably accommodate his disability and for disability discrimination. We granted leave to file the First Amended

Complaint on March 27, 2001. It adds an ADA retaliation claim and alleges breach of the anti-retaliation provision in a settlement agreement ending prior litigation between Pohl and United, as discussed in *Pohl v. United Airlines, Inc.,* 213 F.3d 336 (7th Cir.2000) ("*Pohl I* "). For the reasons set forth below, United's Motion for Summary Judgment is *GRANTED* and final judgment is entered against Plaintiff. This entry also rules on related motions in this matter.

### Procedural Background and Ruling

The procedural history of the conflict between these two parties is inordinately complicated, primarily because of Plaintiff's dilatoriness in pursuing his claims.[1] Pohl neglected to request timely extensions and failed to respond to Defendant's summary judgment motion in the manner prescribed by Federal Rule of Civil Procedure 56 and Local Rule 56.1. Rather than submitting facts and argument in opposition to United's summary judgment motion, Plaintiff filed a number of "creative" motions and other papers after the deadline for summary judgment submissions had closed. Hence, in addition to Defendant's summary judgment motion, five Plaintiff's motions are pending before us: (1) Motion for Partial Reconsideration

("Mot. for Part. Reconsideration") of a discovery order entered by Magistrate Judge Shields on August 24, 2001 ("August 24 Entry"); (2) Verified Response to and Motion to Strike Declaration of Joseph Meszaro; (3) Verified Response to and Motion to Strike Declaration of Marilyn Bourlin; (4) Verified Response to and Motion to Strike Declaration of Stephen Jennings, M.D.; and (5) Motion to Order Supplementation of Responses.[2] We rule on the first of these motions immediately below. The motions to strike, being the most substantive of Plaintiff's motions, are discussed in conjunction with the analysis of United's summary judgment motion. The motion concerning supplementation of responses also concerns Pohl's disability and work history, and it will also be part of the discussion of the summary judgment motion.

### Ruling on the Motion for Partial Reconsideration

■ The Motion for Partial Reconsideration concerns problems arising in the course of discovery, some history of which must be set forth here. Following a series of ultimately unsuccessful settlement discussions, Magistrate Judge Shields ordered that further discovery be completed

1. An additional source of complexity is the fact that the parties' disputes have given rise to more than one lawsuit, as mentioned above. In 1997, Pohl filed a suit against United alleging that the company discriminated against him in various ways based upon his service in the United States Air Force Reserves. The Seventh Circuit affirmed our decision that this suit was settled pursuant to a settlement agreement entered into by the parties in early 1999, despite Pohl's attempt to back out of the agreement. *Pohl,* 213 F.3d at 339. Among other provisions, the 1999 settlement agreement prohibited United from retaliating against Pohl for filing the military discrimination suit. The agreement did not release United from liability for any facts forming the basis of an ADA claim, the subject of the litigation now pending.

2. Throughout this series of unusual filings by Plaintiff, United has submitted timely responses. United's counsel, David J. Rowland and Christopher J. DeGroff of Seyfarth Shaw and John Maley of Barnes & Thornburg, are commended for appropriately responding to Pohl's motions and other submissions. Rather than burdening the record unnecessarily by filing motions to strike Plaintiff's unorthodox filings, which would have initiated another round of briefing, Defendant's counsel simply pointed out the procedural and substantive flaws in Pohl's motions and other submissions. All attorneys practicing before the Court would do well to take note of the admirable prudence and restraint exhibited by United's counsel.

by June 30, 2001 and that any summary judgment motion be served by July 26, 2001, with the filing of the fully-briefed summary judgment motion set for September 15, 2001. Entry for December 1, 2000 ("December 1 Entry") at 1. Plaintiff mailed to Defendant his discovery requests on July 2, 2001, fully one month after they should have been mailed so that the responses could have been provided prior to the July 2, 2001 cut-off date.[3] United filed a Motion for Protective Order on July 9, 2001 asking the Court to bar Pohl from taking the written discovery requested in the July 2, 2001 mailing to Defendant. Plaintiff's response to Defendant's motion, filed on July 25, 2001, included a Motion to Modify Case Management Plan. This motion represents the *first* time Pohl sought relief from the deadlines set in the December 1 Entry. Plaintiff argued that it would be a "manifest injustice" to compel the parties to adhere to the discovery and summary judgment deadlines set in the December 1 Entry because those deadlines related to the original complaint, rather than the amended complaint. Pl.'s Combined Resp. ¶ 20. He also maintained that the resources expended on settlement negotiations limited the amount of discovery that could be done during the attempted settlement process. On August 24, 2001, Magistrate Judge Shields denied Defendant's motion for a protective order, permitting Plaintiff to collect written discovery and to depose two United employees, Joseph Meszaro and Marilyn Bourlin. Entry on Pending Motions ("August 24 Entry") at 2. Magistrate Judge Shields also denied Plaintiff's motion for relief from the summary judgment deadlines set forth in the December 1 Entry; therefore, the timing of discovery and summary judgment

deadlines resulted in a situation where Plaintiff could not use the depositions or discovery responses to oppose United's summary judgment motion. *Id.*

Thus, the stage is set for disposing of the first of the various motions before us. On September 14, 2001, three days before the deadline for filing the fully-briefed summary judgment motion and three weeks *after* Plaintiff's response to the summary judgment motion should have been served upon Defendant, Plaintiff filed a Motion for Partial Reconsideration of the August 24 Entry. Pohl reiterated his argument from the motion to modify the case management plan that new deadlines are needed due to the filing of the amended complaint and that the time spent on efforts to settle the case constitutes good cause for modifying the deadlines.[4] Mot. for Part. Reconsideration ¶¶ 3–4.

This motion is without merit. Federal Rule of Civil Procedure 6(b)(2) authorizes a court "for good cause shown ... upon motion made after the expiration of the specified period[, to] permit the act to be done where the failure to act was the result of excusable neglect ..." Plaintiff's argument that new deadlines are needed due to the filing of the amended complaint is undermined by his claim, when seeking leave to amend, that the matters added in the amended complaint "are similar, if not identical, to and/or overlap with the facts and issues in the original Complaint." Mot. for Leave to File First Amended Complaint ¶ 4. In addition, close inspection of the three cases Plaintiff cites in support of his position that the deadlines in the case should be extended reveals that none of the cases actually aid Pohl in showing

---

3. As explained in the December 1 Entry, because June 30, 2001 fell on a Saturday, the discovery deadline was extended to the following Monday, July 2, 2001, pursuant to Federal Rule of Civil Procedure 6.

4. Plaintiff inappropriately raises these arguments yet again in Plaintiff's Response to the Entry of October 4, 2001. Pl.'s Resp. to Entry of October 4, 2001 at 2–4.

good cause or "excusable neglect." *See* Mot. for Part. Reconsideration at 3. In *Jovanovic v. In–Sink–Erator Div. of Emerson Elec. Co.*, 201 F.3d 894, 896–97 (7th Cir.2000), the Seventh Circuit *upheld* the district court's refusal to consider the plaintiff's response to the summary judgment motion where the plaintiff, as here, had failed even to request an extension before the deadline for the response had passed. *See also Spears v. City of Indianapolis*, 74 F.3d 153, 156 (7th Cir.1996) (upholding district court's refusal to consider evidentiary material in support of opposition to summary judgment where supporting materials were filed after deadline for summary judgment filings); *Williams v. National City Bank of Indiana*, 2000 WL 689181 at *4 (7th Cir. 2000) (same). In general, we agree with Plaintiff's broad statement that the substantive issues before us "warrant a full, two-sided summary judgment presentation." Mot. for Part. Reconsideration at 5. However, the reason for the absence of the two-sided summary judgment argument rests entirely with Plaintiff's dilatoriness in conducting discovery and in responding to the summary judgment motion. Judge Tinder's words, quoted with approval by the Seventh Circuit in *Spears*, are equally applicable to this situation:

> The court, although sympathetic with [Pohl's] circumstance, notes that it is a circumstance of Plaintiff's own making. If the court allows litigants to continually ignore deadlines and seek neverending [sic] extensions without consequence, soon the court's scheduling orders would become meaningless.

*Spears*, 74 F.3d at 158. For this reason, Plaintiff's Motion for Partial Reconsideration is *DENIED*.

## Summary Judgment and Related Motions

### Pohl's Work and Injury History[5]

Pohl first began working for United on September 5, 1989 in San Francisco. In August of 1996, Pohl was transferred to United's Indianapolis facility where he performed scheduled maintenance on certain types of aircraft. In February of 1997, Pohl began work as an Inspector. Inspectors perform "preliminary inspections" of aircrafts in which the inspector, as part of scheduled maintenance, conducts an overview of a particular area of the aircraft to check for problems and "buyback" inspections in which the inspector makes a detailed examination of a particular portion of the aircraft where a repair has been made. The duties of an inspector vary from day-to-day depending on the maintenance needs of the aircraft, but inspection can involve climbing, crawling, and lifting.

Pohl has suffered various back injuries for a number of years. Given the physical nature of the inspector position, Pohl's health problems led to some alternative arrangements in the workplace. In May of 1997, while lifting his son, Pohl aggravated an earlier back injury suffered while changing an aircraft battery on the job in December of 1996. From May 1997 through June 1997, Pohl was absent from work recovering from the injury he suffered while lifting his son. In December of 1997, Plaintiff underwent back surgery. In mid 1998, Pohl returned to work follow-

---

**5.** As noted earlier, Plaintiff failed to respond to United's summary judgment motion in the manner prescribed by Rule 56 and Local Rule 56.1. For this reason, the facts presented here are culled primarily from United's State- ment of Undisputed Facts in Support of Its Motion for Summary Judgment, which relies extensively on Plaintiff's own deposition testimony. Facts drawn from one of Plaintiff's extraneous filings are attributed accordingly.

ing convalescence from this surgery. He was subject to certain physical restrictions, including prohibitions on climbing, bending, squatting, and lifting more than five pounds. Because of these restrictions, United created a temporary "back shop" position where Pohl could stand at a bench to inspect components removed from the aircraft. Also in mid 1998, Pohl began taking pain medication, including Vicodin, Lodine, and/or Neurotin, for his back condition. United permitted Pohl to go home as necessary to administer pain medication because United policy does not allow employees to perform safety-sensitive duties, such as aircraft inspection, while under the influence of medication containing controlled substances like Vicodin. In June of 1999, Pohl again underwent back surgery. He returned to work in August of that year with restrictions similar to those listed earlier.

On February 2, 2000, Meszaro, a manager at IMC, informed Pohl that he could no longer perform the temporary "back shop" duties to which he had been assigned. Pohl was escorted from the maintenance facility. On April 17, 2000, Pohl was removed from paid status and placed on unpaid sick leave status for 16 days. Beginning on May 3, 2000, Pohl was placed on "extended illness status." Pursuant to this status, Pohl retains access to United's internal employee web site and to United's public web site where many job openings are posted. In addition, Plaintiff still has

flight passes for United flights. Since the filing of the summary judgment motion, Plaintiff claims that his medical situation has improved and that he has been released to return to work with certain restrictions. Mot. to Order Supplementation of Resp. ¶ 6. United represents that Pohl and United are discussing what jobs, if any, Pohl may be qualified to perform. Resp. in Opp. to Pl.'s Mot. to Order Supplementation of Resp. ¶ 3.[6]

### Analysis of ADA and Retaliation Claims

The ADA prohibits an employer from "discriminat[ing] against a qualified individual with a disability because of the disability of such individual ..." 42 U.S.C. § 12112. Under this section, plaintiffs can bring disparate treatment claims. *Weigel v. Target Stores,* 122 F.3d 461, 464 (7th Cir.1997). Also permitted are charges that an employer failed to make "reasonable accommodations to the known physical or mental limitations of an otherwise qualified individual with a disability." 42 U.S.C. § 12112(b)(5)(A). Finally, the ADA prohibits retaliation for asserting rights under this chapter. 42 U.S.C. § 12203(a). Pohl asserts all three claims in this case. First Amended Complaint ¶¶ 29, 32, 33. In addition, Pohl claims that United breached the settlement agreement ending *Pohl I* prohibiting retaliation against Pohl for filing his military discrimination case. *Id.* at ¶ 46. Defendant filed a motion for summary judgment on all four claims.

---

**6.** Plaintiff's Motion to Order Supplementation of Responses is the most digressive of the many extraneous motions filed in this case. In this motion, citing Federal Rule of Civil Procedure 26(e), he asks the Court to require United to supplement the declaration of Dr. Jennings to reflect that, on December 11, 2001, Dr. Jennings released Pohl to return to work with certain restrictions thereby "superceding" an earlier assessment in which Dr. Jennings found that Pohl should not work in safety-sensitive positions due to the side effects of Pohl's pain medication. Plaintiff

further asks the Court to order United to supplement its summary judgment papers to reflect this change. From a procedural standpoint, this motion is inappropriate. Rule 26(e) refers to updates of discovery responses, rather than to the supplementation of summary judgment materials. Regardless, the situation regarding Pohl's ability to work as of December 11, 2001 has no bearing on employment discrimination claims arising out of an active employment situation that ended in February of 2000. Hence, Plaintiff's motion is *DENIED.*

## Summary Judgment Standard

Summary judgment is appropriate if "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue of material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R.Civ.P. 56(c). A genuine issue of material fact exists if there is sufficient evidence for a reasonable jury to return a verdict in favor of the non-moving party on the particular issue. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248, 106 S.Ct. 2505, 2510, 91 L.Ed.2d 202 (1986). In considering a motion for summary judgment, a court must draw all reasonable inferences in the light most favorable to the non-moving party. *Spraying Sys. Co. v. Delavan, Inc.*, 975 F.2d 387, 392 (7th Cir.1992). Summary judgment is required only if it is clear that a plaintiff will be unable to satisfy the legal requirements necessary to establish his or her case. *Celotex Corp. v. Catrett*, 477 U.S. 317, 322, 106 S.Ct. 2548, 2552, 91 L.Ed.2d 265 (1986).

## Defendant Entitled to Summary Judgment

Our application of the summary judgment standard to the facts of this case is hindered by Plaintiff's aforementioned dilatoriness in conducting discovery and failure to respond substantively to the summary judgment motion. As noted above, rather than a brief and statement of facts in opposition to the summary judgment motion, we were the recipient of an assortment of submissions filed by Plaintiff in the hope that they would somehow advance Pohl's position. First, Plaintiff filed three verified responses and motions to strike, opposing the declarations of three

United employees, Meszaro, Bourlin, and Dr. Jennings, on the ground that the declarants lacked personal knowledge for their statements. In addition, before us are Plaintiff's two responses to our October 4, 2001 Order to Show Cause ("October 4 Entry") why United's unopposed motion for summary judgment should not be granted and judgment entered for United and against Pohl.

While we have considered all the submissions, we note that Plaintiff's unorthodox filings are not a particularly effective means of making Pohl's case. In part because United has followed the procedural rules, Defendant presents the more coherent and, therefore, persuasive view of the case. Specifically, Defendant argues that Plaintiff's inability to raise a genuine issue of material fact that he can do the job at issue defeats all of Plaintiff's claims. Because Defendant is correct in this assertion, we address only the argument related to this issue despite contentions from both Pohl and United concerning other elements of ADA and breach of contract claims.[7]

 United is dead-on in arguing that the ability to fulfill the requirements of the employment position is a question of central importance for the three types of ADA claims. For disparate treatment claims, in the absence of direct evidence of discrimination, as here, Plaintiff can prove his case indirectly using the *McDonnell Douglas* burden-shifting method. *Hoffman v. Caterpillar, Inc.*, 256 F.3d 568, 571 (7th Cir. 2001). Under this method, Pohl must first make out a prima facie case by showing that "(1) [he] is disabled within the meaning of the ADA; (2) *[he] was meeting the*

---

7. For instance, Defendant argues that Pohl neglected to raise a failure to accommodate claim in his original or amended EEOC charges, thereby precluding him from raising this claim here. Memo. in Supp. of Mot. for Summary Judgment at 15–16. We do not need to address the merits of this contention, however, because Pohl's inability to report for work defeats all of his ADA claims.

*legitimate employment expectations of [his] employer;* (3)[he] suffered an adverse employment action; and (4) similarly situated employees received more favorable treatment." *Id.* at 571–72 (emphasis added).[8] For failure to accommodate claims, where the *McDonnell Douglas* burden-shifting approach is neither necessary nor appropriate, the plaintiff must show that he is a "qualified individual with a disability" and that the employer failed to reasonably accommodate a known disability. *Id.* at 572. This inquiry turns on whether Pohl, "with or without reasonable accommodation, *can perform the essential functions of the employment position* that [he] holds ..." 42 U.S.C. § 12111(8) (emphasis added). With regard to retaliation claims, we return to the burden-shifting approach. *Stone v. City of Indianapolis Public Utilities Div.,* 281 F.3d 640, 642 (7th Cir.2002). The prima facie case for retaliation requires the plaintiff to show, among other things, that "he was performing his job in a satisfactory manner." *Id.*

Failure to perform on the job defeats the plaintiff's case for each of these claims. *Weigel,* 122 F.3d at 467–69 (plaintiff's demonstrated inability to show that she could perform essential functions of employment position entitles employer to summary judgment on disparate treatment claim); *Emerson v. Northern States Power Co.,* 256 F.3d 506, 515 (7th Cir.2001) (failure to demonstrate that plaintiff is "qualified individual with a disability" defeats reasonable accommodation claim); *Hilt–Dyson v. City of Chicago,* 282 F.3d 456, 465 (7th Cir.2002) ("Absent direct evidence of retaliation, failure to satisfy any element of the prima facie case proves fatal to employee's retaliation claim.").

United argues that Pohl failed to meet the basic job requirement that he regularly report to work and that Pohl's ADA claims fail for that reason. Memo. in Support at 11. To assess this argument, we must determine whether regular attendance is an essential function and legitimate expectation of Pohl's job and whether Pohl has created a genuine issue of material fact concerning his attendance record. This analysis demonstrates that United is entitled to summary judgment on Pohl's ADA claims.

The Seventh Circuit routinely recognizes attendance as an essential element of most jobs. *EEOC v. Yellow Freight System, Inc.,* 253 F.3d 943, 948 (7th Cir.2001) ("Common sense dictates that regular attendance is usually an essential function in most every employment setting; if one is not present, he is usually unable to perform his job.") (citation omitted); *Amadio v. Ford Motor Co.,* 238 F.3d 919, 927 (7th Cir.2001) (listing cases in which court found that attendance was essential requirement of employment). The appellate court also notes that "[w]hen an employee is unable to perform the essential function of attending his employment, few, if any, reasonable accommodations exist." *Amadio,* 238 F.3d at 928. While the Seventh Circuit recognizes the possibility of an exception for "the unusual case where an employee can effectively perform all work-related duties at home," *Yellow Freight System,* 253 F.3d at 948 (citation omitted), Pohl's job is not one of these unusual cases. He was expected to inspect aircraft at one of three facilities in the country conducting maintenance on United aircraft flying nationwide. Facts, ¶¶ 3, 18. While Pohl disputes the exact duties of aircraft

---

**8.** The Seventh Circuit has formulated its focus on work performance in another manner, too. In *Weigel,* the court upheld a summary judgment ruling in favor of the former employer on the ground that the plaintiff failed to establish a genuine issue of material fact that she was a "qualified individual with a disability," which the court characterized as an element of her prima facie case. 122 F.3d at 465–66.

inspectors,[9] Pohl makes no argument that his job as an inspector of aircraft can be done anywhere but on the employer's premises. We find that the job of inspecting aircraft is akin to that of a factory worker or a forklift driver in that it must be done on the employer's premises. *See Jovanovic,* 201 F.3d at 899–900 (factory worker); *Yellow Freight System,* 253 F.3d at 949 (forklift driver). We also find that Pohl's inability to report to his job as an aircraft inspector at the work site cannot be reasonably accommodated. *See Amadio,* 238 F.3d at 928.

Now that we have determined that attendance is an essential function of Pohl's job and that failure to report to work falls short of the employer's legitimate expectations, the next question is whether Pohl has created a genuine issue of material fact concerning his attendance record. United relies on the affidavit of Marilyn Bourlin, United's Team Coordinator for People Services at IMC, to show that Pohl had what can fairly be described as an abysmal attendance record. In 1997, he missed 73 out of approximately 260 scheduled work days. Bourlin Dec. ¶ 9. In 1998, that number of absences increased to 136 full days and 53 partial days. *Id.* at ¶ 12. In 1999, too, Pohl was rarely at work, missing 101 full days and 68 partial days. *Id.* at ¶ 14.

■ Pohl's response to this evidence is puzzling. In his Verified Response to and Motion to Strike Declaration of Marilyn Bourlin, Plaintiff argues that Bourlin could not have personal knowledge of any of the facts she affirms in her affidavit. *See also* Plaintiff's Supp. Resp. to the Entry of Oct. 4, 2001 at 6 ("[T]he Bourlin Declaration does not satisfy the 'personal knowledge' requirement of Fed. R. Civ. Proc. [sic] 56(e), and therefore, may not be presented to support the defendant's Motion."). In each paragraph of her affidavit about attendance, Bourlin states "I have reviewed Pohl's attendance records for 1997 [and 1998 and 1999]," Bourlin Dec. ¶¶ 9, 12, 14, but Pohl argues that because "Bourlin could not lay claim to being even the custodian of some personnel records," she could not have personal knowledge of their contents. Plaintiff's Supp. Resp. to Entry of Oct. 4, 2001 at 7. From the fact that Bourlin would have to request an employee's personnel file from the department in which the employee worked before she could review it, Plaintiff insinuates that Bourlin could not have personal knowledge of the records. *Id.* (citing Bourlin Dep. at 53–55). At the risk of sounding harsh, we must say that this reasoning borders on

---

**9.** In his Verified Response to and Motion to Strike Declaration of Joseph Meszaro, Pohl states that "Mr. Meszaro's statement that ' ... an Inspector must be capable of overall inspection of aircraft, including engines, electrical systems, major repairs, overhaul, projects, maintenance checks and critical items' is only partially true ... Rather, those capabilities are only required from the time of bidding through the probationary period." ¶ 4. We first note that the job description quotes directly from qualifications recited in the job posting for the position held by Pohl and that the job posting gives no indication that these duties are limited to the probationary period. Tab J, Materials in Supp. of Mot. for Summary Judgment. Hence, Pohl's self-serving verified response that does not cite to the record does little to convince the Court that the essential functions of the position were other than those set forth by Mr. Meszaro. *See Basith v. Cook County,* 241 F.3d 919, 928 (7th Cir.2001) (noting that regulations suggest, when determining essential functions, consideration of employer's written job descriptions prepared before advertising or interviewing applicants for job and that self-serving affidavits, unsupported by the record, purporting to contradict employer's description do little to aid plaintiffs' claims). Regardless, Pohl has presented nothing to raise a genuine issue of material fact questioning the importance of attendance to job performance.

the ridiculous. In fact, Bourlin's understanding of the process for acquiring a file, combined with her unequivocal testimony that she has access to all personnel records (once she goes through the proper channels), strengthens the basis for her personal knowledge of Pohl's poor attendance record. *See* Bourlin Dep. at 52, 81.[10]

 Thus, we conclude that Pohl has not and cannot raise a genuine issue of material fact that he is able to perform the essential functions of his job with or without reasonable accommodation. We also find that due to his abysmal attendance record, Pohl was not performing his job to his employer's legitimate expectations. As such, United is entitled to summary judgment in its favor on Pohl's reasonable accommodation, disparate treatment, and retaliation claims under the ADA. In the absence of direct evidence of discrimination, as here, the inability to raise a genuine issue of material fact with regard to even on element of the prima facie case entitles the defendant to summary judgment. *Amadio,* 238 F.3d at 924.

 Similar reasoning defeats Pohl's breach of contract claim for retaliation. Pohl puts forth no evidence that the decisions United made with respect to Pohl's employment were made for any reasons other than legitimate business considerations. On the basis of Pohl's poor attendance record, Defendant decided to terminate Pohl's active employment in February of 2000. Without considerably more argument and evidence than Plaintiff has presented here, Pohl cannot link United's employment decisions to any retaliatory motive on the part of Defendant to

punish Pohl for filing a lawsuit in 1997. Having failed to do so, Defendant is entitled to summary judgment on the breach of contract claim.

## Conclusion

For the reasons set forth above, Plaintiff's Motion for Partial Reconsideration is *DENIED.* Further, Plaintiff's Motions to Strike the Declarations of Joseph Meszaro, Marilyn Bourlin, and Stephen Jennings, M.D. are *DENIED.* Plaintiff's Motion to Order the Supplementation of Responses also is *DENIED.*

Defendant's Motion for Summary Judgment is *GRANTED.*

---

10. This analysis also explains why we *DENY* Plaintiff's Motion to Strike the Declaration of Marilyn Bourlin. Clearly, she had adequate personal knowledge on which to base the statements cited in this opinion. In addition, to the extent that we relied upon the declaration of Meszaro, we find his statements to be based on personal knowledge, despite Pohl's arguments to the contrary. We *DENY* Plaintiff's Motion to Strike the Declaration of Joseph Meszaro. Finally, we *DENY* as moot Pohl's motion to strike Dr. Jennings's affidavit. Our analysis did not rely upon the statements of Dr. Jennings.